STATE *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered May 9, 1910.

1.  STATUTES—CONSTRUCTION OF GENERAL WORDS.—When general words in
    a statute follow an enumeration of particular things, such words
    must be held to include only such things or objects as are of the same
    kind as those specifically enumerated.  (Page 116.)

2.  MONOPOLIES—COMBINATION AMONG RAILROADS.—The anti-trust act of
    1905, p. 1, imposing a penalty upon any corporation, partnership or in-
    dividual who shall enter into or become a member of or party to any
    pool, trust, combination, confederation or understanding to regulate
    or fix "the price of any article of manufacture, mechanism, merchan-
    dise, commodity, convenience, repair, any product of mining, *or
    any article or thing whatsoever*," the general words which are itali-
    cized take their meaning from the specific words which precede them,
    and do not apply to combinations among railroad companies fixing
    the rates for services in the carrying of freight or passengers.
    (Page 116.)

Appeal from Garland Circuit Court; *W. H. Evans,* Judge;
affirmed.

STATEMENT BY THE COURT.

The appellant instituted this action against appellee in the
Garland Circuit Court.  The complaint alleges that the appellee
is a foreign corporation, doing business in the State of Arkansas,
and owns and operates a system of railroads in said State; that it
has violated act No. 1 of the General Assembly of the State of
Arkansas of 1905, commonly called the "anti-trust act," by enter-
ing into a pool, trust, agreement, combination, confederation and
understanding with certain domestic corporations, also owning
and operating lines of railroad within the State, for the purpose
of fixing rates to be charged for the service of carrying freight
and passengers.

The prayer of the complaint is that the right of appellee
to do business in the State be forfeited, and, in addition, that the
State recover of appellee the sum of $720,000 as accrued pen-
alties for the violation of the provisions of the act.

The appellee filed a demurrer to the complaint, which was
by the court sustained and the cause dismissed.  The case is
here on appeal.

*Hal L. Norwood,* Attorney General, *W. H. Rector,* Assistant,
*H. B. Means,* Prosecuting Attorney, and *M. S. Cobb,* for ap-
pellant.

The complaint stated a cause of action. 166 U. S. 290; 171 U. S. 505. The act of January 23, 1905, includes railroads. 74 Ark. 528. Any combination of competing corporations, the result of which is to control prices, is void and violative of the anti-trust act. 74 Am. St. 189; 15 L. R. A. 361; 61 Fed. 993; 30 Fed. 2; 47 Am. Dec. 258; 37 So. 939; 113 Am. St. 551; 130 U. S. 396; 90 S. W. 214; 106 S. W. 918; 124 S. W. 397; 18 L. R. A. 657.

*John M. Moore* and *Thos. S Busbee,* for appellee.

Penal statutes must be strictly construed. 66 Ark. 466; 53 Ark. 336; 76 Ark. 303; 70 Ark. 329; 6 Ark. 134; 43 Ark. 415; 64 Ark. 271; 87 Ark. 409; 67 Ark. 156; 74 Ark. 528; 70 Ark. 451; 61 Ark. 494; 120 S. W. 740; 116 S. W. 1016: 110 N. Y. S. 186; 91 S. W. 214; 118 N. W. 276. In the absence of repugnancy, the more specific statute will control the general. 71 Ark. 135; 84 Ark. 329; 80 Ark. 411.

HART, J., (after stating the facts). The question raised by the appeal is, do the provisions of the anti-trust act apply to the fixing of rates for services performed by railroads in carrying freight and passengers?

Section 1 of the act is as follows:

"Section 1. Any corporation organized under the laws of this or any other State or country, and transacting or conducting any kind of business in this State, or any partnership or individual, or other association, or persons whatsoever, who are now, or shall hereafter create, enter into, become a member of, or a party to, any pool, trust, agreement, combination, confederation or understanding, whether the same is made in this State, or elsewhere, with any other corporation, partnership, individual, or any other person or association of persons, to regulate or fix either in this State or elsewhere the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or tornado, or to maintain said price, when so regulated or fixed, or who are now, or shall hereafter enter into, become a member of or a party to any pool, agreement, contract, combination, association or confederation, whether made in this State or elsewhere, to fix or limit in this State or elsewhere the amount or quantity of any article

of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by any corporation, partnership, individual, or association of persons aforesaid, shall be deemed and adjudged guilty of a conspiracy to defraud, and be subject to the penalties as provided by this act."

Section 2 of the act prescribes the penalty. Section 3 provides for the forfeiture of corporate rights and franchises of corporations that violate its provisions. Acts of 1905, p. 1.

Of course, a railroad corporation operating a line of railroad in this State is a corporation conducting a business in the State, but, as above stated, the question is, does such corporation violate the provisions of the act by entering into an agreement with other railroad corporations to fix the value of the services of railroads in the carriage of freight and passengers? Counsel for the State do not contend that freight or passenger rates are articles of merchandise, manufacture, mechanism, commodity, convenience or repair, or that they are products of mining; but they do contend that the words "or any article or thing whatsoever" include passenger and freight rates. We can not agree with their contention. This is a plain case for the application of the doctrine of *ejusdem generis.*

The rule is "when general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically enumerated." 2 Lewis, Sutherland on Statutory Construction (2 ed.), § 422.

As stated by this court, in the case of *Hempstead County v. Harkness,* 73 Ark. 600: "It is an old and settled rule of statutory construction which confines the meaning of additional and general descriptive words to the class to which the preceding specific words belong." See also *Eastern Arkansas Hedge Fence Co. v. Tanner,* 67 Ark. 156; *St. Louis I. M. & S. Ry. Co. v. Love,* 74 Ark. 528. The Legislature has delegated to the State Railroad Commission the power to fix rates for the transportation of freight and passengers. Many other acts having for their object the regulation of railroads have been enacted, and severe penalties prescribed to secure their enforcement. The questions

affecting transportation by common carriers have always· been the subject of separate and independent legislation in this State. Congress has created a commission to investigate and act upon complaints made in regard to rates affecting interstate commerce. These facts were matters of common knowledge at the time the "anti-trust act" of 1905 was enacted. The act does not purport to deal with the subject of transportation by common carriers, or the fixing of rates therefor, as do the acts in the cases cited by counsel for the State to sustain their contention. Counsel for the State rely chiefly upon the decisions in the cases of *State* v. *Missouri, K. & T. Ry. Co.* (Texas), 91 S. W. 214, and *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290.

In the first of these cases, the Supreme Court of Texas was construing the act of 1903 passed by the Legislature of that State. The court said: "The act of 1903 expressly deals with combinations affecting transportation, competition therein, and the cost thereof," and the decision was based on that fact. An examination of the statute shows that it dealt directly and in express terms with the subject. The Supreme Court of the United States had under consideration the "Sherman Anti-trust Act." The court said: "Neither is the statute, in· our judgment, so uncertain in its meaning, or its language so vague, that it ought not to be held applicable to railroads. It prohibits contracts, combinations, etc., in restraint of trade or commerce, Transporting commodities is commerce, and, if from one State to another, it is interstate commerce." Hence it will be seen that these authorities recognize the rule of construction above announced, but did not apply it for the reason that the statutes under consideration, by their express terms, undertook to deal with the subject of transportation by common carriers and the fixing of rates therefor.

As above stated, our "anti-trust act" does not in express terms attempt to deal with the question of transportation by railroads or other carriers, or the fixing of rates therefor. It would be a violent presumption, indeed, to say that the Legislature in this vague and indefinite manner attempted to deal with a subject which so vitally affects the welfare of the people, and a proper solution of which has ever been one of the greatest con-

cern and complexity. It seems evident to us that the framers of the act intended that the words "or any article or thing whatsoever" should take their meaning from the things specifically mentioned before, and that, when so construed, the allegations of the complaint do not constitute a violation of the terms of the act. *State* v. *Williams,* 120 S. W. (Mo. Sup Ct.), 740; In re *Attorney General,* 110 N. Y. Supp. 186; *Rohlf* v. *Kasemeier,* 118 N. W (Iowa), 276.

The judgment will therefore be affirmed.