IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1910.

(Continued from Vol. 98.)

---

CUMBERLAND TELEPHONE & TELEGRAPH CO. *v.* STATE ON
RELATION OF ATTORNEY-GENERAL.

[54 South. 446.]

1. TELEGRAPHS AND TELEPHONES. *Regulations. Charges. Statutory law.
Common carrier.* Code 1906, *sections* 4826, 4899, 4842, 4843, 4844,
4839, 4841, 4845, 4883. *Laws* 1908, *chapter* 119, *p.* 124.

By Code 1906, §§ 4826, 4899, a railroad commission is created for
the supervision of common carriers, defining its purpose, and provid-
ing remedies for its violation, of which section 4843 includes tele-
graph and telephone companies as common carriers, as ·declared
by Constitution 1890, § 195. Section 4842 gives the commission
power to fix and supervise rates, section 4839 prohibits discrimina-
tion in rates, unless authorized by the commission, section 4844
forbids rebates or reductions from fixed charges, and sections 4839,
4841, 4845 and 4883, provide remedies for violations of the act.
Annotated Code 1892, sections 4437, 4442, relating to combinations

in restraint of trade and agreements fixing the transportation of commodities, was extended in 1900 (Laws 1900, ch. 88), section 2 of which became Code 1906, § 5002, and was re-enacted by Laws of 1908, chapter 119. Section 1, sub-section K as amended by subsection N and O defines trusts and combines, and provides procedure and remedies for violations of the act. The defendant company was charged, in a bill filed on relation of the attorney-general, with being a trust, with discriminations in its rates, and with attempting to monopolize the business of independent companies; the prayer of the bill being for an injunction and ouster, and for penalties. *Held* that the specific statutes relating to railroad commission conferred jurisdiction upon it as to the whole matter of regulating telephone rates and provided ample remedies for violation of law to the exclusion of the general anti trust laws.

2. STATUTES. *Implied repeal.*

Laws are presumed to be passed with deliberation and with full knowledge of all existing laws on the same subject, and it is but reasonable to conclude that in passing a statute, it was not intended to interfere with or abrogate any former law relating to the same matter, unless this latter act is either repugnant to the earlier one, or fully embraces the subject-matter thereof, or unless the reason of the earlier law is beyond peradventure removed.

3. TELEGRAPHS AND TELEPHONES. *Statutes. Construction. Remedies.*

Code 1906, § 4885, in the chapter on supervision of common carriers, originally enacted in 1884, before the enactment of the anti-trust laws, provides that the remedies given by this chapter shall be cumulative to those existing by law. *Held,* that in view of Code 1906, §§ 4841, 4883, relating to procedure against common carriers, and the penalties for violation of the anti-trust law provided by Code 1906, § 5004, the section permits no election of remedies for injuries due to a discrimination in telephone rates, but the remedy is limited to that provided by the act for the supervision of common carriers.

4. TELEGRAPHS AND TELEPHONES. *Charges. Statutory provisions. Remedy for discriminating charges.*

Code 1906, § 5007, being part of chapter 145, relating to trusts and combines, and providing that, in a suit by any person injured by a trust or combine, proof that such person has been compelled to pay more for services rendered by a public service corporation by reason of such combine than he would have been compelled to pay but for such agreement or combine, shall be conclusive evidence of

damage and of unlawful purpose, does not indicate an intention of the legislature that the anti-trust laws should apply to discrimination in rates made by a telephone company, defined to be a "common carrier" by the laws for the supervision of common carriers.

APPEAL from the chancery court of Quitman county. HON. J. Q. ROBBINS, Chancellor.

Bill by state of Mississippi on the relation of the attorney-general against the Cumberland Telegraph & Telephone Company, to enjoin it from doing business in alleged violation of the anti-trust law and to recover penalties. Demurrer overruled and defendant appeals.

The facts are fully stated in the opinion of the court.

*Harris & Potter,* for appellants, filed an elaborate brief contending that this case is one which falls exclusively under the jurisdiction of the railroad commission. That there is no phase of it which is not provided for and protected by the Railroad Commission Act; that it was created for the purpose of preventing such discrimination as this, if discrimination, in fact, exists and is unlawful, and that it is not a matter embraced in, or intended to be embraced in the Anti-Trust Act. Citing: Lewis' Sutherland Stat. Con., vol. 2, § 363; *Eskridge* v. *McGruder,* 45 Miss. 294; *Barnes* v. *Greer,* 65 Miss. 710; *Wood* v. *Mitchell,* 47 Miss. 231; *Witherspoon* v. *Lewis,* 47 Miss. 570; *Logan* v. *State,* 53 Miss. 431; *Board of Education* v. *Railroad Co.,* 72 Miss. 236; *Lemonius* v. *Mayer,* 71 Miss. 514; Lewis' Sutherland, vol. 2, §§ 369, 370, and 471; *Railroad Co.* v. *State,* 46 Miss. 157; *Kimball* v. *Alcorn,* 45 Miss. 145; Lewis' Sutherland Stat. Con., vol. 2, § 499, p. 931; 26 Am. and Eng. Ency. Law, 645 (f) N. S., 36 Am. and Eng. Ency. Law, p. 731 (2) N. S., Lewis' Sutherland Stat. Con., § 581, p. 1072, and § 390; *Peeler* v. *Peeler,* 68 Miss. 141; 26 Am. and Eng. Ency. Law, 505; *Green* v. *Weller,* 32 Miss. 650; *Searles* v. *R. R. Company,* 85 Miss. 560; Lewis' Sutherland Stat. Cons., pp. 965-966.

*S. S. Hudson,* attorney-general, for appellee.

The state legislatures have powers to deal with the subject-matter and prevent unlawful combinations to prevent competition and in restraint of trade and prohibit and punish monopolies—this is no longer an open question. The above is the language of Mr. Justice Day in 212 U. S. 105, 177 U. S. 28; 20th Supreme Court Rep. 518; 194th U. S. 445.

The legislature of the state of Mississippi has passed such law.

That law is held constitutional.

The railroad commission law is not in conflict with nor antagonistic to the anti-trust laws.

Equity has jurisdiction as determined by supreme court in *Hall* v. *LaFayette County,* 70 Miss., also 72 Miss. 76-77, and authorities there cited, and the L. & N. R. R. case.

The constitutionality is determined by the *Retail Lumbers Dealers' Association,* 48 So. 1026; Judge Lurton's opinion, in May, 1910; *Waters-Pierce case,* 212 U. S. 86. *The Hammond Packing Co. case,* 212 U. S. 322, and numerous authorities cited in these cases.

As to due process of law, see 2 L. R. A. 655.

Excessive fines, 27 U. S. Sup. Ct. Rep. 305.

Equal protection of the laws, 197 U. S. 115; 25 U. S. Sup. Ct. Rep. 379-289.

We submit that the facts show a flagrant disregard of the law; that the court exercised great indulgence in rendering his decree and the cause should be affirmed.

*Sharp & McIntyre,* for appellee, filed a brief fully covering case and contending that the Cumberland Telephone Company cannot discriminate against certain persons and localities and utterly disregard the provisions of chapter 145, Code of Mississippi, 1906, and the amendments thereto. Citing: *Chesapeake & P. Tel. Co.* v. *B. & O. Co.,* 59 Am. Rep. 167; *State ex rel. Baltimore & Ohio Tel. Co.* v. *Bell Tel. Co.,* 23 Fed. 535; 25 Am. and

Eng. Ency. Law, p. 750; 25 Am. and Eng. Ency. Law, pp. 775-776; *State ex rel. American Union Tel. Co. v. Bell Tel. Co.,* 38 Am. Rep. 583; *State, etc., v. Citizens Tel. Co.,* 55 L. R. A. 139; 14 Am. and Eng. Ency. Law, 1st Ed., p. 163; *Transfer Co. v. Telephone Co.,* 24 Albany Law J. 283; *State v. Telephone Co.,* 23 Fed. Rep. 539; *Nebraska Telephone Co. v. State ex rel.,* 45 L. R. A. 113; *Railroad Commission v. G. & S. I. R. Co.,* 78 Miss. 750; *State, etc., v. Telephone Co.,* 55 L. R. A. 139; *State, etc., v. Telephone Co.,* 38 Am. Rep. 583.

Argued orally by *J. B. Harris* and *W. V. Sullivan,* for appellant, and *S. S. Hudson,* attorney-general, and *W. P. Shenalt,* for appellee.

ANDERSON, J., delivered the opinion of the court.

The state of Mississippi, appellee, on the relation of the attorney-general, filed its bill in the chancery court of Prentiss county against the appellant, the Cumberland Telephone & Telegraph Company, charging it with being a trust, in violation of the anti-trust laws of the state, and seeking to enjoin it from the further prosecution of its alleged unlawful business, and to recover the penalties denounced by the anti-trust statutes for carrying on such business. The appellant demurred to the ·bill, which demurrer was by the court below overruled, and the appellant granted this appeal to settle the principles of the cause.

The substantial allegations of the bill are: That about fifty per cent. of the telephone business of the state is done by the appellant and the balance by the independent companies. That Booneville and Baldwyn are towns of two thousand and twelve hundred inhabitants, respectively, in each of which appellant has less than six hundred "subscribers." That the established tariff rates for telephone service fixed by the railroad commission for towns in that class are two dollars and seventy-five

cents per month for business houses, one dollar and sixty-five cents per month for residences,'' and for country service to points not more than one and one-half miles distant from the switchboard two dollars per annum per each phone on line, and two dollars and seventy-five cents per month per line additional.'' That these rates so fixed ''applied to Batesville, Baldwyn, Booneville, Water Valley, Holly Springs, and sixty-four other towns'' in the state, and are charged and collected by appellant at all those places, except Baldwyn and Booneville, and possibly two or three others. That at Rienzi, Booneville, and Baldwyn the appellant, for the purpose of driving its competitors from the field, and monopolizing the telephone business in that territory, is, and has been since about 1905, discriminating in its rates against sixty-odd other towns in the state, where the established rate is exacted, in this: That from Rienzi to Corinth, and from Rienzi to Booneville, it has abandoned the regular rate of twenty cents for three minutes service over its toll line, and instead gives the Rienzi Telephone Company free service to Booneville and a ten-cent rate to Corinth. That it has only sixteen patrons at Booneville, all of whom are charged less than the established rate; some paying one dollar per month for residences, some one dollar and fifty cents for business houses, others two dollars, and three are given free service. That on country lines running out more than one and one-half miles from its switchboard at Baldwyn, a flat rate of only two dollars per annum is charged certain of its patrons (naming them), while ''at other places the regular tariff rate of two dollars per annum for each phone, and two dollars and seventy-five cents per line per month additional,'' is charged. That appellant is doing business at a loss at Booneville and Baldwyn; its income at each of those places being largely less than its outlay. That by means of such practices the appellant has monopolized the public telephone business at Rienzi,

and is attempting "to monopolize the prosecution, management, and control of the public telephone business at Booneville . . . to the great injury of the citizens of the state, and to the injury of the independent telephone companies at Booneville and Baldwyn," etc. That this suit is predicated upon chapter 145, Code of 1906, and chapter 119, p. 124, Laws 1908, amendatory thereto.

The prayer of the bill is that appellant be enjoined from further violations of law, "and be ousted from the state of Mississippi," and a decree in favor of the state for a penalty of one thousand dollars per day for each day the law has been violated, aggregating one million and five hundred thousand dollars. The grounds of demurrer raise the question whether there is any equity on the face of the bill.

The gravamen of the bill is that the appellant company, for the purpose of driving out its competitors at Rienzi, Booneville, and Baldwyn, and thereby destroying competition in the telephone business in that territory, is guilty of unlawfully discriminating in rates; such discrimination consisting of the practice of charging less at those points than the regular and lawful tariff of rates, and at Booneville and Baldwyn of charging some of its patrons less than others.

It is contended on behalf of the state that such discrimination constitutes a violation of subsections "k" and "o," § 1, c. 119, pp. 125, 126, Laws of 1908. This act, down to and including subsection "o," is a rescript of section 5002, ch. 145, Code 1906 ("Trusts and Combines"), except by amendment subsections "n" and "o" are added, and the last paragraph of section 5002 extended so as to include individuals, partnerships, and associations of persons. Subsections "k" and "o" and the last paragraph of section 1, prescribing the penalty for their violation, are as follows:

"Any corporation, domestic or foreign, or individual, partnership or association of persons whatever, . . .

(k) who shall monopolize or attempt to monopolize the production, control or sale of any commodity, or the prosecution, management or control of any kind, class or description of business; . . . (*o*) or who shall destroy or attempt to destroy competition by rendering any service or manipulating, or handling or storing any commodity for a less price in one locality than in another, the differences in the necessary expenses of carrying on the business considered,

"Shall be deemed and held a trust and combine within the meaning and purpose of this act, and chapter 145 of the Code of 1906, and shall be liable to the pains, penalties, fines, forfeitures, judgments and recoveries denounced against trusts and combines in said chapter 145 of the Code of 1906, and shall be proceeded against in manner and form therein provided, as in case of other trusts and combines. And it shall be sufficient to make out a *prima facie* case of a violation of subdivision 'n' hereof to show a sale or offer of sale of commodity at a lower price at one place in this state than another, or a violation of subdivision '*o*' to show a lower charge for the service therein mentioned, in one locality than another."

On the other hand, it is contended that such discrimination is no violation of the anti-trust laws; that our statutes providing for the supervision of common carriers confer jurisdiction on the railroad commission of the whole matter of the regulation of rates of telephone companies, and provide ample remedies, to both the state and the individual, for injuries done by such companies in making unlawful discriminations in their rates, which are exclusive. In our judgment an understanding of the terms of the respective statutes involved, the mischief sought to be remedied by each, and the remedy provided therefor leads unerringly to the correct solution of the question in this case.

The first act passed for the supervision of common carriers was that of 1884 (Laws 1884, p. 31, ch. 23), which provided alone for the regulation of passenger and freight rates on railroads, and created a commission to supervise such carriers.  By section 6 of that act the railroad commission was given authority to fix and supervise tariffs of charges of railroad companies for carrying passengers and freight, and prohibit them from making any rebate or reduction from the rates so fixed, "in favor of any person, locality or corporation, which shall not be made in favor of all other persons, localities or corporations, except as may be allowed by the Commission," and it provided remedies to both the state and individuals for injuries done for its violation. The act of 1884, being revised and amended so as to include telephone, telegraph, sleeping car, and express companies, and in other respects extending and enlarging the powers of the railroad commission, was brought forward into the annotated Code of 1892, being chapter 134 of that Code.   And this chapter, being further revised and amended so as to include car service associations, and otherwise extending the authority and jurisdiction of the commission, was brought forward into the Code of 1906, forming chapter 139 of that Code.

By section 195 of the Constitution of 1890, express, telegraph, telephone, and sleeping car companies are declared common carriers and subject to liability as such. By section 4843, Code 1906 (section 4291, Code of 1892) telephone companies are brought under the operation, so far as applicable, of all the statutes on the supervision of carriers, and are required "to comply with the orders and regulations of the commission made in supervising their companies, in like manner, and under like penalties against their companies, their officers and employes, as is provided in case of railroads," and are made liable civilly and criminally in the same manner as railroads. By section 4842, Code 1906 (section 4290, Code 1892),

the railroad commission is given the power to revise and fix rates, and in so doing is to consider the character and nature of the service to be rendered, and the entire business of the carrier and all its earnings, and fix such rates as will allow reasonable compensation for such service. And section 4839, Code 1906 (section 4287, Code 1892), prohibits discriminations in rates, against any person, locality or corporation, "unless authorized by the commission." And section 4844 (section 4292, Code 1892) makes unlawful "any rebate or reduction from the tariffs of charges fixed or approved by the commission, in favor of any person, place or corporation, by a change in or deviation from the rates so fixed or approved, unless such change or deviation be first allowed by the commission." And by sections 4839 (section 4287, Code 1892), 4840 (section 4288, Code 1892), 4841 (section 4289, Code 1892), 4845 (section 4293, Code 1892), and 4883 (section 4329, Code 1892), remedies are provided to the state and to individuals for unlawful discriminations in rates, and for other violations of law and orders of the commission. The sections of the Code of 1892, above referred to, are substantially the same as the corresponding sections in the Code of 1906.

The first anti-trust legislation is found in chapter 36, p. 55, Laws 1890, which was revised, amended, and brought forward into chapter 140, Code 1892. In neither the Act of 1890, nor the chapter of the Code of 1892 referred to, is there any provision which, by any construction whatever, could be made to include the case in hand. Those statutes are devoted exclusively to combinations, conspiracies, and agreements in restraint of trade, and affect the production, manufacture, sale, and transportation of "commodities," etc. The first extension of the anti-trust legislation beyond this scope was the act of 1900 (Laws 1900, p. 126, c. 88), section 2 of which contained the identical language of subsection "k," § 1, ch. 119, p. 124, Laws 1908, which also appears in the same

language in the last paragraph of section 5002, Code 1906. At that time there had been in existence for several years a statutory system or policy by which the railroad commission was given jurisdiction of the rates of carriers. "Laws are presumed to be passed with deliberation and with full knowledge of all existing laws on the subject, and it is but reasonable to conclude that in passing a statute it was not intended to interfere with or abrogate any former law relating to the same matter, unless the latter act is either repugnant to the earlier one or fully embraces the subject-matter thereof, or unless the reason of the earlier law is beyond peradventure removed." 26 Am. and Eng. Ency. Law (2 Ed.), 72.

The subject of rates of common carriers is of such vital importance to the public generally, and so intricate, and fraught with so many difficulties, so many varying circumstances and conditions must be considered in determining whether a given rate is just and reasonable, and when and to what extent discriminations in rates ought to be allowed, that the legislature has wisely refrained from dealing with the matter directly, instead providing a complete system of supervision through a commission, giving it jurisdiction of the whole subject, with the power to take testimony and examine into each particular rate and determine its reasonableness. If the rate so established is lowered by the carrier, whether for the purpose of destroying competition, as is alleged against the appellant here, or for any other purpose, the supervision statutes give remedies deemed by the legislature to be ample, which are exclusive of the remedies provided in the anti-trust laws. The supervision laws are specific, they deal with the very subject of rates, and discriminations in rates; while the anti-trust laws are general, and wholly inadequate to remedy the well-known evils flowing from discriminatory and unjust rates.

The only cases brought to our attention which throw any light on this question (and neither of them is directly in point) are *Railroad Company* v. *Searles,* 85 Miss. 520, 37 South. 939; *United States* v. *Trans-Mo. Freight Ass'n,* 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; *State* v. *Chicago, R. I. & P. Ry. Co.* (Ark.), 128 S. W. 555, and *State* v. *M., K. & T. R. R. Co.,* 99 Tex. 516, 91 S. W. 214, 5 L. R. A. (N. S.) 783. In *Railroad Co.* v. *Searles, supra,* it was held that the fact that car service associations, by Laws 1898, p. 97, were put under the supervision of the railroad commission, indicated a purpose on the part of the legislature that such associations should not be deemed within the anti-trust laws. In *United States* v. *Trans-Mo. Freight Ass'n, supra,* it was held that a contract between competing railroads in reference to traffic rates for articles of interstate commerce, the effect of which was to produce restraint of trade, was not within the terms of the interstate commerce act, but of the Sherman anti-trust law; and in *State* v. *Chicago, R. I. & P. Ry. Co., supra,* a similar contract between railroads was held not within the terms of the Arkansas anti-trust laws, and for the further reason that the matter of passenger and freight rates had been the subject of separate and independent legislation. And in *State* v. *M., K. & T. R. R. Co., supra,* it was held that "the existence of a state commission, with power to regulate the rates of railroads and express companies, does not take such companies out of the operation of the statutes (anti-trust laws) forbidding combinations affecting transportation, competition therein, and the cost thereof." There is no charge in this case of a conspiracy or agreement between two or more telephone companies to fix or maintain rates.

Section 4885, Code 1906, provides that the remedies given by this chapter (the chapter on supervision of common carriers) against railroads and other common carriers are cumulative to those now existing by law. It is

contended this provision, which has been in all the statutes on the supervision of carriers from the first act passed in 1884, gives the state and the individual injured the election to proceed either under that chapter or under the anti-trust laws. This position is untenable, so far as injuries growing out of discriminations in rates are concerned. In that respect both laws cannot operate. The enforcement of one will strike the other down. To illustrate: Suppose the railroad commission should so fix the tariffs of rates of two competing railroads as to permit one to charge so much less than the other for exactly the same service as would result in the one unfavored being destroyed. If the state should sue under the anti-trust laws, would it not be a complete defense that the rate charged was legal; that it was the rate fixed by the railroad commission? It appears to us it would. Section 4841, Code 1906, makes discriminations in rates by a carrier a criminal offense, but provides that the carrier "cannot be punished criminally if its tariffs of charges shall have been approved by the commission, and if the charge complained of be not variant from that allowed thereby." Would such a defense be available in a suit under the anti-trust laws for a discrimination in rates, resulting in a monopoly of the business? The anti-trust statute itself provides for no such defense. Take the concrete case: The appellant is sued for monopolizing and attempting to monopolize the telephone business at certain points, by making unlawful discriminations in its rates. Section 4883, Code 1906, provides that in the trial of cases brought against carriers for violating the tariffs of charges as fixed by the commission they may show, in defense, that such tariffs so fixed were unreasonable and unjust (which suits are authorized as well for an undercharge as an overcharge). No such defense would be permissible under the anti-trust laws. The penalty and remedy therefor provided by the respective statutes are radically different. The

penalty for a violation of the anti-trust laws (section 5004, Code 1906) is not less than two hundred dollars nor more than five thousand dollars for each offense, and each day the law is violated is made a separate offense, and the remedy is a suit in the name of the state, on the relation of the attorney-general or district attorney; while the supervision statute (section 4883) provides a fixed penalty of five hundred dollars for each violation of law, to be recovered in a suit by the railroad commission, on the relation of the attorney-general or district attorney. Other examples might be given to show that the legislature intended that the laws for the supervision of common carriers should constitute a complete and independent system within themselves, and that the anti-trust laws were not intended as any part of such system.

Section 5007, Code 1906, provides that, in a suit under that section by any person injured by a trust and combine, proof by such person that he has been compelled "to pay more for any service rendered by any corporation exercising a public franchise, by reason of such unlawful agreement, . . . than he would have been compelled to give . . . but for such act or agreement, shall be conclusive evidence of damage," as well as the unlawful purpose to raise the price of such service. It is argued that this section evidences a purpose on the part of the legislature to apply the anti-trust laws to discriminations in rates, like the case in hand. In the first place, by its express terms it only applies where the person injured is made to pay more (not less) for the service rendered by virtue of the unlawful act or agreement; and in the next place, as we have shown, it cannot, without destroying the effectiveness of the supervision laws, have any application to the subject of discrimination in rates by common carriers, and its terms must, therefore, be limited to that extent.

We would not be understood as holding that the anti-trust laws have no application in any case to those carriers under the supervision of the railroad commission, but that they have no application to those matters alone directly and specifically dealt with by the supervision laws, of which the commission is given jurisdiction. In all other respects the anti-trust laws apply.

*Reversed and remanded.*

Suggestion of error filed and overruled.