CHEROKEE PUBLIC SERVICE COMPANY *v.* HELENA.

Opinion delivered June 29, 1931.

42

*Donham & Fulk*, for appellant.

*Buzbee, Pugh & Harrison*, for appellee.

KIRBY, J., (after stating the facts). Appellant contends that, under the terms of its franchises, it was only bound to furnish the gas in accordance with its contract, "contingent upon acts of God, and other things beyond the control of the grantee herein;" and that it was not liable for failure to perform its contract; being unable to procure a supply of gas for distribution to the cities under its franchises from the pipe line company, a common carrier of gas through the State. It alleged that all the parties to the franchises knew that appellant company had no gas wells or supply of its own, and must procure the gas from the pipe line company in order to perform its contracts for distribution. The franchise for the city of West Helena expressly states it is granted with a full knowledge on the part of the city that the natural gas to be furnished by the grantee under this franchise is not to be secured from wells owned by the grantee, but is to be furnished the grantee by other parties through pipe lines. That, because thereof, the supply of gas available for distribution "may be interrupted or entirely discontinued from causes beyond the control of the grantee," in which event there shall be no lia-

bility against the grantee therefor; the requirements of this franchise being that, so long, during the term of it, as the grantee has a supply of gas available, it shall furnish such gas to said city and the inhabitants thereof in accordance with the conditions and terms of the franchise.

In the franchises granted by the other appellees, the gas was agreed to be furnished in accordance with the ordinance within a year after the passage thereof and its acceptance by appellant, and to insure the supply a bond was required to be posted with the city council within 30 days after the acceptance of the ordinance; "it being understood, of course, that the grantee's inability to furnish such gas within the period above named shall be contingent upon acts of God and other things beyond the control of the grantee herein."

The allegations contained in the complaint that it was beyond the control or power of appellant company to procure a supply of gas for distribution under its franchises to the different cities from the pipe line company, notwithstanding it was ready and willing to contract and pay for such gas and entitled to its delivery from the said company, were not sufficient to relieve appellant from liability for its failure to perform its contracts in accordance with the terms of the franchises. It is not an allegation of facts showing "inability to furnish the gas contingent upon acts of God and other things beyond the control of the grantee herein." The failure or inability of appellant to make a contract with the pipe line company for delivery of the supply of gas for distribution under its franchises can in no wise be considered due to an "act of God," nor can it be construed to come within the meaning of the term "other things beyond the control of the grantee herein." The meaning of this latter general clause is limited by the expression preceding "acts of God," and includes, under the doctrine *ejusdem generis,* only such things as are similar in character, it being an old and settled rule of

statutory construction, which confines the meaning of additional and general descriptive words to the class to which the preceding specific words belong. *Hempstead County* v. *Harkness*, 73 Ark. 600, 84 S. W. 799; *State* v. *Ry. Co.*, 95 Ark. 114, 128 S. W. 555; *Eastern Arkansas Hedge Fence Co.* v. *Tanner*, 67 Ark. 156, 53 S. W. 886; Ex parte *King*, 141 Ark. 213, 217 S. W. 465; *Greene County* v. *Smith*, 148 Ark. 33, 228 S. W. 738.

If it was not shown that appellant's inability to procure the gas for distribution was due to the fact that the fields from which the pipe line carrier was operated had ceased to produce gas, or that the pipe line company, because of the exhaustion of production of gas in the fields from which its supply of gas had been produced and inability to discover other fields of production to supply its needs, had ceased operation, it might have relieved appellant of the obligation of its contract for distribution of gas under its franchises, or rather for damages for breach of it, according to its terms, and been a complete defense to the suits. Or it may be that, if it was shown the public enemy had destroyed the pipe line, or the government or State had taken it over under some necessity for operation, this would have excused the performance of the contract by the appellant.

It certainly cannot be said, within the meaning of the term "and other things beyond the control of the grantee herein," following the words "acts of God," that the refusal of the pipe line company, alleged to be a common carrier of gas, to make a contract with appellant company to supply gas for distribution under its franchises, was a thing beyond the appellant's control, excusing it from the performance of the contract, and the court did not err in sustaining the demurrer.

Appellant contends, in any event, that the court erred in not considering the acceptance bonds, required by the cities, as providing a penalty or forfeiture, instead of liquidated damages. In *Nilson* v. *Jonesboro*, 57 Ark. 168, 20 S. W. 1093, a case where the city brought suit

to recover on a bond given it to guarantee the performance of a contract to complete a line of street railway within a year, the court considered the contract as liquidated damages and gave judgment for the stipulated amount. It was there said:

"The only question to be decided in this case is, whether the sum mentioned in the third clause of the contract should be treated as a penalty or as liquidated damages. * * * The authorities, however, show that where the intention to liquidate the damages is not obvious, the stipulated sum will usually be given the effect of a penalty if it exceeds the measure of a just compensation and actual damage sustained is capable of proof. But where the contract is of such nature that the damage caused by its breach would be uncertain and difficult of proof, the sum named by the parties is generally held to be liquidated damages, if the form and language of the instrument are not unfavorable to that construction and magnitude of the sum does not forbid it. * * *

"In the case at bar the appellee is a municipal corporation and could not in its corporate capacity suffer any injury by a breach of the contract. If an actual loss was contemplated by the stipulation in question, it could only therefore have been such as would result to the public. And, as the parties must have known that it was wholly impracticable to measure this by any rule of damages, it is reasonable to suppose that they intended to fix the terms of the contract the precise sum recoverable for its breach. *Clark* v. *Barnard*, 108 U. S. 436, 460, [2 S. Ct. 878.]"

In *Robbins* v. *Plant*, 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128, the court, after a review of the authorities, said:

"These cases hold that, if the contract provides for a definite sum as the liquidated or stipulated amount to be paid upon a breach thereof, then the amount so fixed upon by the parties may be sued for; and it is not necessary for plaintiff to prove any actual loss by reason of the defendant's breach of the contract. All that is nec-

essary to entitle the plaintiff, in such a case, to recover the stipulated sum, is to show the breach of the contract upon which the payment thereof depends. In other words, the effect of a clause for stipulated damages is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from the breach of the contract, and thereby prevent a controversy between the parties as to the amount of damages." See also *City of Salem* v. *Anson*, 40 Ore. 339, 67 Pac. 190, 56 L. R. A. 169.

In the Blytheville franchise it is expressly stipulated that the damages for breach of this section (the one requiring the giving of the $5,000 bond) will be $5,000, to secure the payment for which the above mentioned bond is given.

The contracts and franchises of the other cities and the bonds for the performance of which appellant was required to give are all of such nature as to show that the damages caused by the breach thereof would be uncertain and difficult to prove, and the sum named by the parties was correctly held to be liquidated damages, the form and language of the instruments not being unfavorable to that construction, and since, if any loss was contemplated by the parties for the breach of the contracts, it could only have been such as would have resulted to the public, "and (as said in *Nilson* v. *Jonesboro, supra*), as the parties must have known that it was wholly impracticable to measure this by any rule of damages, it is reasonable to suppose that they intended to fix by the terms of the contract the precise sum recoverable for its breach."

It follows from what has been said that no error was committed by the court in sustaining the demurrer to the complaint of appellant company, and to its answer to the cross-complaint of appellee cities; nor in holding the amounts of the bonds to be liquidated damages and recoverable as such, and the decree is in all things affirmed.