Terry Yamauchi, M.D. Director, Department of Human Services 329 Donaghey Building P.O. Box 1437 Little Rock, Arkansas 72203-1437
Dear Dr. Yamauchi:
This is in response to your request for an opinion interpreting language contained in Act 922 of 1991, which is the appropriation act for the Division of Economic and Medical Services ("the Division") of the Department of Human Services ("DHS").
After setting out the various appropriation amounts for the Division, the appropriation act contains several substantive provisions,[1] including Section 17, which forms the basis of your question. It provides as follows:
 All individuals who provide personal care services or home health aide services in a Long-Term Care Facility or in any other setting, in the State of Arkansas must complete an aide training program as required by Arkansas Code § 20-10-704. The Department of Human Services shall provide for the maintenance of a registry of all certified personal care and home health aides. Upon completion of the training program these individuals must seek and obtain certification from an independent entity approved by the Department of Human Services — Division of Economic and Medical Services. All aides who provide services in an inpatient hospital setting are hereby exempt from this provision. [Emphasis added.]
You note that the language of Act 922 appears to conflict with A.C.A. § 20-10-704 (Supp. 1989), which provides that:
 The Office of Long-Term Care of the Division of Economic and Medical Services of the Department of Human Services shall establish a training program to be completed by all aides in long-term care facilities who provided [sic] personal care to residents. [Emphasis added.]
You specific question is as follows:
 Whether section 17 of Act 922 of 1991 modifies and expands the role of the Division of Econmonic and Medical Services to provide training and certification to all individuals who provide personal care services or home health aide services.
The question arises because under § 20-10-704, the Division, specifically its Office of Long-Term Care, must establish a training program for all "aides in long-term care facilities." The language of Act 922, however, appears to state that this training program is to apply to these aides and personal care and home health aides who provide their services in "any other setting," not just in a long-term care facility.
Although the answer is by no means clear, it is my opinion, for the reasons that follow, that the answer to your question is most likely "yes," Act 922 does modify and expand the role of the Division, and enlarge upon the existing requirements of A.C.A. §20-10-704. We must note, however, that the issue is by no means easily resolved, and may ultimately require legislative clarification or resort to the courts for determination.
The first rule of statutory construction is to construe a statute just as it reads, giving words their ordinary meaning in common usage. Bolden v. Watt, 290 Ark. 343, 719 S.W.2d 428 (1986). If legislation is clear, a court must apply its clear meaining, but if it is ambiguous, a court must decide what the legislature intended. Dooley v. Hot Springs Family YMCA, 301 Ark. 23,781 S.W.2d 457 (1989). Where language of a statute is ambiguous, a court may look not only to the language used, but to the subject matter of the act, the object to be accomplished, the purpose to be served, the expediency of the act, the remedy provided, the consequences following its enactment and various extrinsic matters which may throw some light on legislative intent.Arkansas State Highway Commission v. Mabry, 229 Ark. 261,315 S.W.2d 900 (1958).
At first blush, it appears that the language of Act 922 unambiguously states that personal care and home health care aides who provide these services in "any . . . setting" are required to complete the aide training program established under A.C.A. § 20-10-704. Other factors, however, may weigh against such a construction. The first factor is other language of the same sentence of Act 922, which could be construed as creating an ambiguity. The sentence states that: "[a]ll individuals who provide personal care or home health aide services in a Long-Term Care facility or in any other setting . . . must complete anaide training program as required by Arkansas Code §20-10-704." [Emphasis added.] The latter part of the sentence states that these individuals must complete the training program "as required by . . .' 20-10-704." It could be argued that the use of the word "as" leads to the conclusion that the legislature may simply have been restating the requirements of § 20-10-704, rather than adding to them. When the words "as required by § 20-10-704" are used, the connotation is that the statute already requires what has been stated earlier in the sentence. The word "as" is defined as meaning "in or to the same degree in which."Webster's Seventh New Collegiate Dictionary 50 (1979). Thus, when the words "as required" are used, they refer to what is required by § 20-10-704, and that statute only requires aides "in long-term care facilities" to complete the training thereunder established. An ambiguity might not exist if the legislature had stated that these individuals must complete "the aide training program required by § 20-10-704" or "the aide training program established under § 20-10-704." It did not use such language. The language used could conceivably be interpreted as merely restating the current law as embodied in § 20-10-704, before it goes on to set out two new requirements of Section 17, that is, the independent certification process and the maintenance of a registry of these aides. In any event, this language, in my opinion creates an ambiguity which leads to the employment of statutory construction aids to determine the legislative intent.
One of these statutory construction aids is the rule that repeals by implication are not favored, Arkansas Day Care Association,Inc. v. Clinton, 577 F. Supp. 388 (E.D. Ark. 1983), and a court will not conclude that a statute has been repealed by implication unless the legislative intention to repeal or supersede the statute plainly and clearly appears; and the implication must be clear, necessary, and irresistible. See also, RicelandFoods, Inc. v. Second Injury Fund, 289 Ark. 528, 715 S.W.2d 432
(1986). If Section 17 of Act 922 were construed to apply to home health and personal care aides working outside "long-term care facilities," such a construction could impliedly repeal the regulations adopted by the Department of Health governing the training of these aides. Specifically, A.C.A. § 20-10-801 etseq. provides for the regulation of home health care services and gives the the State Board of Health authority to promulgate rules and regulations to accomplish the purposes of that subchapter. The board, pursuant to this authority, has adopted regulations pertaining to the training of these individuals.See Rules and Regulations for Home Health Agencies inArkansas, (adopted January 25, 1990.) It could be argued that the legislature, which is deemed to have knowledge of these regulations, (McLeod v. Santa Fe Trail Transporations Co.,205 Ark. 225, 168 S.W.2d 413 (1943)) did not intend to repeal, amend, or divest the authority of the State Board of Health over the training of home health aides by virtue of one phrase in an appropriations act.
It may also be argued, however, that the legislature has not impliedly repealed any authority of the State Board of Health, as its authority to adopt training requirements for home health aides is not specifically set out in the statutes. Rather, it merely falls under a broad authority to adopt regulations to adminster the subchapter governing home health. See A.C.A. §20-10-806. It could be argued, additionally, that any requirements the legislature imposes as to the training of these aides would be in addition to any already required by the State Board of Health.
Another statutory construction aid is the doctrine of "ejusdemgeneris," which provides that where general words follow particular ones, the general words must be construed as applicable to persons or things of the same kind or species as the specific words. Cherokee Public Service Co. v. City of WestHelena, 184 Ark. 38, 41 S.W.2d 773 (1931). This doctrine is always used to determine the legislative intent, and does not control where the plain intent of the legislature would be hindered thereby. Wiseman v. Affolter, 192 Ark. 509,92 S.W.2d 388 (1936). Applying this doctrine to the language of Section 17 of Act 922 would mean that the words "in any other setting," the general words, are confined to the same types of settings as "long-term care facility," the specific words. It could be contended that the legislature used the word "long-term care facility" in its popular sense to mean a nursing home, and added the phrase "any other setting" to include such related facilities as adult day care centers, residential care facilites, or other facilities providing long-term care. If this argument were accepted, the phrase "in any other setting" would not refer to services provided in a private singular home, as this setting is not one of the same nature or species as a "long-term care facility."
Of course, the term "long-term care facility" is defined at A.C.A. § 20-10-702 as "a nursing home, residential care facility, an adult day care facility, or any other facility which provides long-term medical or personal care." It thus appears that the legislature may have used this term in its statutorily defined sense, and already intended the phrase "long-term care facility" to include all of these types of facilities, and in using the term "in any other setting" intended something different, (i.e. home health services provided in a private home). Seegenerally, City of Fort Smith v. Gunter, 106 Ark. 371 (1913). The Gunter case discussed the doctrine of ejusdem generis
and concluded that the use of the word "other" to precede the general terms indicated that the legislature intended something different from the specific terms and not something only of the same species or nature as the specific terms. The court stated:
 It is a general principle of construction that where general words follow particular ones, the general words must be construed as applicable to persons or things of the same kind or species. But in volume 6 of Words and Phrases, page 5071, the word `other' is defined. It was there said, `The rule of ejusdem generis is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent. When it can be seen that the particular word, by which the general word is followed was inserted, not to give coloring to the general word, but for a distinct object, then to carry out the purpose of the statute, the general word ought to govern. It is a mistake to allow the rule to pervert the construction.' [Citation omitted.] And under the same title, it was also said that the word `other' implies something additional. [Citation omitted.] And as a further definition of the word `other,' the following quotation from the case of Hyatt v. Allen, 54 Cal. 353, is given: `other' . . . is equivalent to `different from those which have been specified.' `Other' does not mean the same as the word `also.' Wesbster's definition of `other' is `different from that which has been specififed'; Worchester's `not the same; not this or these; different.'
106 Ark. at 377-378.
This case stands for the proposition that when the word "other" is used, (such as in "in any other setting,") the rule ofejusdem generis may not apply, and the intent of the legislature may have been to specify something entirely different from the specific words used.
It is thus my opinion that Act 922 of 1991, Section 17, probably does expand or modify the role of the Division of Economic and Medical Services of DHS in providing training to personal care and home health aides. In my opinion, the provisions of A.C.A. §20-10-704 may have been changed to require persons providing these services in places other than long-term care facilities to complete the training. This issue appears to be unclear, however, because of the nature of this statutory change. It is unclear whether the legislature intended to make such a sweeping change by inserting one phrase in an appropriations act. Consequently, this issue would be best resolved by a court faced with the question.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] There is no prohibition in Arkansas against the inclusion of substantive provisions in an appropriation act. All that is required is that each appropriation act must "embrace but one subject." Arkansas Constitution, Art 5, § 30. It is my opinion that Section 17 of Act 922 of 1991 is not problematic under this section.