--------

Ex parte King.

Opinion delivered December 15, 1919.

1. Courts—act creating juvenile courts.—Acts 1911, page 166, establishing a juvenile court, did not create a separate court, but placed it within the jurisdiction of the county court.

2. Infants—jurisdiction over juvenile delinquents.—The judicial and administrative functions with reference to delinquent infants, conferred upon the county courts by Acts 1911, page 166, do not interfere wth the constitutional jurisdiction of the probate courts over the estates of infants.

3. Constitutional law — personal liberty and right to jury trial.—Acts 1911, page 166, can not be construed as depriving minors of the personal liberty and trial by jury guaranteed by the Constitution, as the intention of this act was not to confer on the county court power to institute criminal proceedings, but the purpose is to supply those who are destitute, homeless, abandoned, wayward or incorrigible with such environments as will conduce to their physical, moral and intellectual well being.

4. Infants—jurisdiction of probate courts.—Constitution 1874, article 7, section 34, vesting in the probate court exclusive jurisdiction in matters relative to guardians, refers solely to the private guardianship as it affects the person and estate of the individual minor, and not to the interests of the public.

5. Constitutional law—construction—rule of ejusdem generis.—The doctrine that general words following an enumeration of particular things must be held to include only such things or objects as are of the same kind as those specifically enumerated applies in the construction of a constitution.

6. Constitutional law—Construction.—It is the duty of courts to construe the various sections of the Constitution so as to make the instrument as a whole harmonious.

*Certiorari* to Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*W. K. Ruddell,* for petitioner.

1. The "juvenile act" is unconstitutional, and hence appellant's conviction of delinquency by the Independence Court was void. Kirby & Castle's Digest, § 1561, being section 2 of the juvenile act of 1911. It creates a court unknown to and not mentioned in our Constitution. Art. 7, sec. 1, Const. 1874; 7 R. C. L. 981; 102 Ill. 218; 81 S. W. 435; 108 *Id.* 563; 60 S. E. 78; 1 Pin. (Wis.) 449; 45 Ala. 103; 36 Atl. 662.

2. The county court could not have jurisdiction. 115 Ark. 130; 90 *Id.* 195; 95 *Id.* 194; 3 L. R. A. (N. S.) 564, 575; 2 R. C. L. 343; 18 Am. St. 569; 90 Ark. 198.

3. The statute expressly gives the right of supersedeas. K. & C. Dig., § § 1533, 1590; L. R. A. 1915 E, 340, 343; 37 Wash. 258; 79 Pac. 786.

4. *Habeas corpus* can not take the place of appeal. 55 Ark. 275; 51 *Id.* 215; 49 *Id.* 143; 48 *Id.* 283.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, and *R. E. Wiley,* special counsel, for respondent.

1. Juvenile acts like ours (Acts 1917, page 288) have been sustained in practically all the States. 257 Ill. 328; 100 N. E. 892; Ann. Cases 1914 A, 1223-1227 and note; 213 Pa. St. 48; 5 Ann. Cas. 92; 14 *Id.* 816; 88 Pac. 609; 120 Am. St. 935; 18 L. R. A. (N. S.) 886; 120 Am. St. 952 and note. The general purpose of such acts is stated in 196 Fed. 123. They are not penal or criminal, but the purpose is to protect minors from prosecution and conviction and confer a benefit both upon the child and

the community.  See also 51 Conn. 472; 103 Wis. 651; 79 N. W. 422.

2.  The act is not unconstitutional.  26 Ala. 156; 209 Mo. 708; 108 S. W. 563.

3.  The act does not create a new court, nor a separate one, but vests properly jurisdiction in the county courts which have jurisdiction "in all matters" relating to "paupers," "vagrants," "minors" and the local concern of counties, etc., and ejusdem generis.  213 Pa. St. 48; 5 A. & E. Ann. Cases 92; 144 N. W. 804; 38 Ark. 406.

4.  The commitment by the juvenile court can not be superseded.  75 N. E. 655; 2 L. R. A. (N. S.) 244; 170 Pac. 130; L. R. A. 1918 C, 921; 87 Pac. 1069; L. R. A. 1918 C, 923 and notes.

WOOD, J.  Miss Blanche Martin is superintendent of the Girls' Industrial School of Arkansas.  This school was established by act of the General Assembly, approved February 9, 1917.  Section 14 of the act in part is as follows:  "That the present land, buildings and equipment now occupied by the Boys' Reform School is hereby converted into an institution to be known as the Girls' Industrial School of the State of Arkansas, and the same is hereby turned over to the board of managers of the Girls' Industrial School of the State of Arkansas, to be used by them for the care and custody of delinquent and dependent girls under the age of eighteen years.  That the said board of managers shall, immediately after the passage of this act, proceed to erect at least two cottages, and equip the same for the care of such delinquent and dependent girls as may be committed to said school by the juvenile courts of this State."

Pearlie King was adjudged a delinquent by the juvenile court of Independence County on the 5th of May, 1919, and committed to the Industrial School.  On the 9th of September, 1919, a writ of habeas corpus was issued by Circuit Judge W. H. Evans of Saline County, directed to Miss Blanche Martin, ordering her to produce the body of said Pearlie King and to show the cause of

her imprisonment. Miss Martin responded, bringing Pearlie King before the circuit judge, and alleged that she held the custody of Pearlie King under the authority of an order of the juvenile court of Independence County. This order adjudged in part as follows: "That the said Pearlie King, being the age of fifteen years, be taken to the Girls' Industrial School at Little Rock and turned over to them to be handled by them as they deemed best for the interest of said child."

The circuit judge thereupon denied the petition and remanded Pearlie King to the custody of Miss Blanche Martin.

These proceedings are brought to us for review by certiorari.

It appears from the record that Pearlie King is held in custody under an order of the juvenile court of Independence County.

The first question for our consideration therefore is whether or not the act 215 of the Acts of 1911, page 166, creating juvenile courts is constitutional. The title of the act is, "An act creating and establishing a juvenile court in the several counties of this State, defining the jurisdiction and powers thereof, providing for the support of the same, and for other purposes." The first section of the act declares: "That all persons under the age of twenty-one years shall, for the purpose of this act only, be considered wards of this State and their person shall be subject to the care, guardianship and control of the court, as hereinafter provided.

"A court, to be known as 'The Juvenile Court,' is hereby created and established in the several counties of this State. The court shall be held by the county judge of the county at the place where the county court is, by law, required to be held, and may be opened and adjourned from time to time, as the judge thereof may deem proper. The clerk of the county court shall be the clerk of the juvenile court, and any officer or person, who, under the law, is authorized to serve process issued from

any of the courts of this State, may serve the process issuing out of the juvenile court.''

Then follows the definition of the words ''dependent child,'' ''neglected child'' and ''delinquent child.'' Also a provision that the disposition of any child under the act and evidence given in the cause shall not be used for any purpose whatever except in subsequent cases against the same child under the act, and a provision prohibiting the newspapers from publishing the name of the child proceeded against without a written order of the court. There is also a definition of the words ''child and children'' and ''parent and parents,'' and of the word ''association.''

The second section of the act provides: ''The county courts of the several counties of the State shall have original jurisdiction in all cases coming within the terms of this act. All trials under this act shall be by the court without a jury.''

Section 3 of the act provides as follows: ''The findings of the court shall be entered in a book or books to be kept for that purpose, and known as the 'Juvenile Record' and the court may, for convenience, be called 'The Juvenile Court.' ''

Succeeding sections provide for the method of procedure, petition, process, notice, trial, final disposition of the cause, and an appeal to the circuit court.

We need not analyze the various provisions of the act. Suffice it to say when they are all considered, as they must be, and given their proper construction in relation to each other, it was not the intention of the Legislature to create a separate and independent tribunal and vest it with certain functions and powers, but rather to place within the jurisdiction and power of the county court, in the manner provided in the act, the subject-matter of the disposition of minors, who, for purposes of the act, are considered wards of the State.

The act prescribes certain functions and confers certain powers, some of which are clearly judicial and others clearly administrative. Some of the sections of the act

fail to discriminate between the functions which are judicial and those which are administrative. For instance, in the sixth section the county court is given authority to appoint any number of discreet persons of good moral character to serve as probation officers. Also in the fourteenth section the judge of the juvenile court is given the power to appoint a board composed of six reputable men and women to constitute a board of visitation, etc. The above functions are clearly administrative.

Other sections prescribe duties and functions which are clearly judicial. For instance, in the first section a court is designated as a juvenile court to be held by a county judge at the place where the county court is required to be held with the same procedure and the same machinery for the discharge of the functions and duties prescribed as are designated for the county court. In this and other sections court proceedings are provided for and issues are to be determined by the court which are judicial in character. While the first section of the act designates the court, when performing the duties and functions prescribed by the act as the "Juvenile Court," nevertheless the act requires that these duties and functions shall be performed by the the county judge and the other officers who constitute the necessary machinery for holding the county court. The clerk of the county court is the clerk of the juvenile court, and the sheriff and other officers, who under the law are authorized to serve process from the county court, serve the process issuing from the juvenile court.

The key note for the construction of this act to determine whether or not it was the purpose of the Legislature to create an independent tribunal with separate powers is found in the second and third sections. The second section confers upon the "county courts original jurisdiction in all cases coming within the terms of this act." The third section, while designating the court as the "Juvenile Court" and its record as the "Juvenile Record," expressly declares that this is done "for convenience."

Construing the act as a whole, we have reached the conclusion that it was not the purpose of the Legislature to create an independent tribunal and to confer upon it judicial powers. The act, therefore, does not offend against article 7, section 1, of our Constitution, which provides that, ''The judicial power of the State shall be vested in one Supreme Court; in the circuit courts; in county and probate courts, and in justices of the peace.''

In 7 R. C. L., p. 981, sec. 9, it is said: ''In most of the jurisdictions in which juvenile court legislation has been enacted, separate and distinct courts have not, however been provided for, but the jurisdiction of the regular courts has been enlarged to cover the matters embraced in the legislation.'' The judicial power conferred by this act, as we construe it, is vested in the county courts. See also *Lindsay* v. *Lindsay*, 257 Ill. 328; Ann. Cas. 1914 A, 1223, and note at page 1227.

The next question is, Was it within the power of the Legislature to confer upon the county court jurisdiction of the subject-matter contained in this act?

The act defines at length the words, ''dependent,'' ''neglected'' and ''delinquent child,'' and declares that all such children under the age of twenty-one shall, for the purposes of this act only, be considered wards of this State and their person shall be subject to the ''care, guardianship, and control of the court,'' meaning the county court.

The act is an exceedingly long one, and it is therefore impractical, without unduly extending this opinion, to set forth in detail and discuss all its provisions. The seventeenth section provides: ''This act should be liberally construed to the end that its purposes may be carried out, towit, that the care, custody and discipline of the child shall approximate as nearly as may be that which should be given it by its parents, and in all cases of dependency, where it can properly be done, that the child shall be placed in approved family home, and become a member of a home and family by legal adoption or

otherwise, and, in cases of delinquency, that as far as practicable any delinquent child shall be treated, not as a criminal, but as misdirected and misguided and needing aid, encouragement and assistance, and if such child can not be properly cared for and corrected in its own home or with the assistance and help of the probation officers, then that it may be placed in a suitable institution where it may be helped and educated and equipped for industrial efficiency and useful citizenship."

Section 20 provides: "Nothing in this act shall be construed to give the guardian appointed under this act the guardianship of the estate of the child or to change the age of minority for any other purpose except the custody of the child."

The judicial and administrative functions conferred by the act upon the county court and the judge of that court in no manner interfere with the jurisdiction conferred by the Constitution upon probate courts over the estate of infants, for the act in express terms declares that its purpose was not to interfere with the guardianship of the estate of the child. The intention of the lawmakers was not to confer upon the county court the power to institute proceedings against minors by way of criminal prosecution or punishment for alleged violations of law. The act, therefore, could not be construed as depriving minors of that personal liberty guaranteed by the Constitution and trial by jury before they can be deprived of that liberty. On the contrary, the sole purpose of this act seems to be to supply those who are "destitute, homeless, abandoned," wayward, or incorrigible, who have not yet arrived at the age where they are entitled by the law of nature or of the State to absolute freedom, with such environments as will conduce to their physical, moral and intellectual well-being. This law undertakes to reclaim and reform, rather than to condemn and punish. For these unfortunate minors who come within the terms of the act it opens the doors of an asylum, but not a jail. For orphan children who are "destitute, homeless, abandoned or dependent upon the

public for support," this law seeks to provide as near as may be the home life. Those children who have become or are likely to become idle, vicious and depraved by reason of the neglect of parents, guardians or others having control over their persons, this law undertakes to rescue from their vile and dangerous surroundings, and to place them where they may be supported, educated, reformed, and thus made useful members of society. In other words, the State, as *parens patriae,* by virtue of this law, assumes the guardianship of those of her minor children who come within the terms of the act and hence need her protection. She has imposed upon her subordinate governmental agency, the county, the burden of costs incident to the proceedings set forth in the act and has designated the county court and the judge thereof, the functionary having in charge the administrative affairs of the county, as the most suitable instrumentality to execute the beneficent purposes of the act.

The only provision of the Constitution referring in specific terms to guardians is found in article 7, section 34, which is as follows: "The judge of the county court shall be the judge of the court of probate, and have such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians and persons of unsound mind and their estates as is now vested in the circuit court, or may be hereafter prescribed by law."

At that time circuit courts were vested with exclusive jurisdiction, under certain conditions, to appoint guardians of minors, and such guardians "were entitled to the charge, custody and control of the person of their ward and the care of his education, support and maintenance, etc." See act of April 22, Acts of 1873; Kirby's Digest, § § 3776-77.

By the above provision of the Constitution all of that jurisdiction was taken away from the circuit courts and vested exclusively in the probate courts, the intention being "to restore the probate system as it existed under

the Constitution of 1836." *Hall et al.* v. *Brewer et al.*, 40 Ark. 433; *Watson* v. *Henderson,* 98 Ark. 63.

A careful consideration of the act of April 16 of the Acts of 1873, and of the act of April 22 of the Acts of 1873 (pages 120, 187), and of the constitutional provision above vesting in probate courts original exclusive jurisdiction in matters relative to guardians, convinces us that the above provision refers solely to the private guardianship of the persons and estates of minors, that is to the guardianship as it affected the person and the estate of the individual minor, and not the interests of the public. The jurisdiction over infants and their guardianship, so far as their conduct and condition might affect, not only themselves but also the welfare of the communities in which they resided or might be found, was vested by the framers of the Constitution in some other tribunal.

It was the intention of the framers of the Constitution of 1874 to cover by general outline every possible subject, public and private, that might come within the sphere of judicial or *quasi*-judicial action and to specifically parcel out and vest the jurisdiction over such subject among the various courts created by that Constitution. After so doing, the makers of the Constitution, in a sort of a "lest we forget" clause, provided that "the circuit court shall have jurisdiction in all civil and criminal cases, the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." Art. 7, § 11.

This has been held to give the circuit courts the great residuum of jurisdiction over all matters which had not been confided by the Constitution exclusively to the jurisdiction of other tribunals. *State* v. *Devers,* 34 Ark. 188. So that it is certain that if the guardianship of infants as defined in the act under review is not vested by the framers of the Constitution in some other specific tribunal it is vested by the above provision of the Constitution in the circuit courts. But it is not probable that the wise men who framed the Constitution of 1874, when they came to allot jurisdiction of the various courts

which they had created, did not specifically have in mind
a subject-matter so vital to the interests of every commu-
nity as the public guardianship of the destitute, home-
less, abandoned and wayward infants.

The majority of us have reached the conclusion that
the Constitution vested the jurisdiction of the subject-
matter contained in this act in the county courts, as the
tribunal best suited to exercise jurisdiction of this kind,
and that the particular clause conferring such jurisdic-
tion is found in article 7, section 28, as follows: "The
county court shall have exclusive original jurisdiction in
all matters relating to county taxes, roads, bridges, fer-
ries, paupers, bastardy, vagrants, the apprenticeship of
minors, the disbursement of money for county purposes
and in every other case that may be necessary to the in-
ternal improvement and local concerns of the respective
counties." The specific authority for this act is found
in the all-embracing clause "in every other case that may
be necessary * * * to the local concerns of the respective
counties."

It will be observed that certain subjects are enum-
erated in the last provision quoted that relate peculiarly
to the financial affairs of the county, such as county taxes
and the disbursement of money for county purposes. An-
other class embraces matters that pertain especially to
internal improvements, such as roads, bridges and fer-
ries.

Of both of these classes it might appropriately be
said that they have reference particularly to the material
and financial interests of the counties. But there is still
another class, while indirectly affecting the financial af-
fairs of the county, nevertheless relates to the conditions
of good citizenship and affects the moral welfare of the
communities. Such, for instance, is the jurisdiction over
paupers, bastardy, vagrants and the apprenticeship of
minors. After enumerating the particular subjects in
these classes, by the sweeping clause "in every case that
may be necessary to the internal improvement and local
concerns of the respective counties," it was manifestly

intended to include not only the particular subjects designated but all those not named which might reasonably come within the same generic class.

The doctrine of *ejusdem generis* may apply as well in the construction of a constitution as in the construction of a statute. That doctrine is that when general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically enumerated. See *Lee* v. *Huff,* 61 Ark. 494-502; *Hempstead County* v. *Harkness,* 73 Ark. 600-2; *State* v. *C., R. I. & P. R. Co.,* 95 Ark. 114-16; *State* v. *Gallagher,* 101 Ark. 593-7; *Jones* v. *State,* 104 Ark. 263.

This court has in effect applied the doctrine in numerous cases wherein it has been held that county courts have jurisdiction over the subject-matter of levees and ditches. These, although not expressly mentioned, it is held, belong to the same general class of internal improvement as roads, bridges, ferries, etc. *Cribb* v. *Benedict,* 64 Ark. 555; *Board of Directors St. Francis Levee Dist.* v. *Redditt,* 79 Ark. 154-8.

The constitutionality of acts vesting jurisdiction in county courts to construct levees, drains and ditches is bottomed upon the theory that these are subjects of internal improvement and local concern of a public nature and for a public purpose over which the county courts have exclusive original jurisdiction under article 7, section 28, *supra.* See "Construction of Drains and Ditches," chap. 46, secs. 1414-50 inclusive, and "Levees and Cut-Offs," chap. 100 of Kirby's Digest; *Lee Wilson & Co.* v. *Wm. R. Compton Bond & Mtg. Co.,* 103 Ark. 452.

In matters of local concern as affecting the moral status of the community, this court has sustained acts conferring upon county courts jurisdiction in the matter of passing upon petitions for putting in force local option laws and in granting and withholding licenses for the sale of intoxicating liquors. In *Ex parte Leon Levy,* 43 Ark. 42-9, this court held that the county courts "may exercise a discretion in determining whether any licenses

should be granted in the township or ward, and who may be fit subjects of the grant. In determining these questions or similar ones, the court acts as a court, discharging the proper functions of a court, invested with police powers, and making orders affecting the general good of the citizens, with regard to their local concerns. This is within the ambit of their constitutional purpose."

In *Trammell* v. *Bradley, County Judge*, 37 Ark. 374-81, this court says: "The counties are governmental agencies—the Briarean arms of the sovereign power; and, through the county courts, the operations of general police regulations may be best adapted to circumstances. The Constitution has invested them, under legislative direction, with the exclusive original jurisdiction of all matters connected with the internal improvement and local concerns of their respective counties. It seems to harmonize with that, to make them the proper tribunals, under fixed laws, to ascertain and declare the facts and circumstances under which certain police laws are to operate, as depending upon the knowledge, by the inhabitants of special localities, of their best interests, and the expression of their desires. What may, in some localities, be a great evil, may, in others, be a convenience or a necessity."

In the minds of the framers of our Constitution, the subjects of "paupers, bastardy, vagrants and the apprenticeship of minors" were considered matters of such local concern affecting the welfare of the immediate communities or counties, respectively, where these classes of persons might be found, that it was deemed wise to vest in the county courts, as subordinate governmental agencies in control of the affairs of the county, the jurisdiction over these subjects.

It occurs to a majority of us that governmental control over the subject-matter of infants, wards of the State, who are dependent, neglected and delinquent, as these terms are defined in the act under review, are in the same general class and are of the same character as the subjects above enumerated and were intended, in the gen-

eral clause covering "every other case necessary to the local concerns of the respective counties," to come under the jurisdiction of the county courts vested by that clause.

If infants are dependent, neglected and in indigent circumstances, they are paupers; if they are born out of wedlock they are bastards; if they are idle and homeless they are vagrants; and if they have no trade or vocation they are subject to apprenticeship. If infants belong to some one or all of these classes, they come within the jurisdiction conferred upon the county courts by the above provision of the Constitution. If within any of these classes, the fact that they are infants should not render them any the less amenable to such jurisdiction. Certainly no higher duty could devolve upon the government than to throw proper safeguards around that helpless class who have become dependent, neglected, abandoned and wayward, and who have thus become a charge upon the public, or wards of the State.

These, of course, are functions of government in which the whole State in a broad sense is interested, but which in a peculiar and local sense affect the immediate communities where the unfortunate classes, defined in the act, are located. Hence, we conclude that the Legislature made no mistake in vesting the jurisdiction conferred under the designation "juvenile courts" in county courts. That is where it belongs under our Constitution.

In reaching this conclusion, we are not unmindful of the jurisdiction conferred by the Constitution upon courts of chancery, which is the same jurisdiction that courts of equity exercised at the time of the adoption of the Constitution. Art 7, § 15, Const. Courts of equity at the time of the adoption of our Constitution had general jurisdiction over the persons and property of minors. *Bowles* v. *Dixon*, 32 Ark. 92; *Myrick* v. *Jacks*, 33 Ark. 425; *State* v. *Grisby and Wife*, 38 Ark. 406; *Watson* v. *Henderson*, 98 Ark. 63.

In the last case we said: "But it was not intended by the Constitution to take away from the chancery

courts their ancient original jurisdiction over the persons and estates of minors so far as such jurisdiction may be necessary for the protection of the infant or to protect his property from waste or spoliation through the carelessness, fraud, mistake or imposition of his parents, guardians, or others. These are distinct grounds of equitable jurisdiction which have existed since the establishment of courts of chancery, and have been recognized in the jurisprudence of our English-speaking people for centuries.''

This jurisdiction of chancery courts is not a supervisory jurisdiction over the courts of law, for that is vested by the Constitution in the circuit courts. Art. 7, § 14. While this ancient jurisdiction of courts of chancery over the person and estates of infants under our Constitution is original, it does not arise and can not be invoked except upon some purely independent equitable grounds. This jurisdiction of chancery courts, as the jurisdiction of probate courts in matters relating to guardians, deals solely with the person and the estate of the individual infant and has reference to the interests of the particular individual rather than to a class. It deals with matters of private guardianship and not with that public guardianship over infants as a class, such as was contemplated by the framers of the Constitution by the jurisdiction conferred upon county courts, as *parens patriae,* to assume custody and control over infants as wards of the State whenever their condition, or their conduct, makes it necessary that this should be done for the public welfare.

This jurisdiction of chancery courts can never be invoked so long as the county courts properly discharge the high and sacred duties committed to them. It is the duty of this court to construe the various sections of our Constitution so as to make the instrument as a whole harmonious. The construction which we have given article 7, section 28, and the act under consideration, preserves that harmony.

Through the diligence of counsel we have been favored with citation to several cases which show that acts similar to this have generally been upheld by the courts. The leading case is *Commonwealth* v. *Fisher,* 213 Pa. St. 48, 5 Ann. Cas. 92. Other cases are *Lindsay* v. *Lindsay, supra,* and see case note to above case 1914 A, 1223-1227; *Pugh* v. *Bowden,* 54 Fla. 302, 14 Ann. Cas. 816; *Mill* v. *Brown,* 31 Utah, 473, 88 Pac. 609, 120 Am. St. Rep. 935, and note at page 952; *In re Sharp,* 15 Idaho, 120, 96 Pac. 563, 18 L. R. A. (N. S.), 886. We have examined these and found them helpful. They prepare a friendly approach for the construction of the act, but they are not controlling for the reason that none of them is based upon provisions like ours.

The progressive and enlightened policy of such legislation is everywhere recognized and commended. Happily for the unfortunate class benefited and for the public weal, we find no barrier in our organic law to the act in its present form.

The judgment of the circuit court, awarding the custody of Pearlie King to the Girls' Industrial School, is correct and is affirmed.

McCULLOCH, C. J., (dissenting). The constitutional parceling out of the jurisdiction of the various courts is complete. Jurisdiction is specifically assigned as to almost every conceivable subject, but out of superabundant caution, the framers of the Constitution made the circuit court the residuum of all unassigned jurisdiction. It is only where a subject is not found within the list of those specifically assigned to other courts that it falls within the residuum clause of the jurisdiction of the circuit court.

The statute now under consideration with reference to the consignment of children to the place of refuge provided for in that statute is not one for the punishment of crime, and, of course, does not fall within the criminal jurisdiction vested in the circuit court or of the justices of the peace. It comes within the range of that subject

which embraces the care and custody and protection of infants. The jurisdiction of that subject-matter is expressly vested by the Constitution in the probate court. Section 34, article 7, provides that a court of probate shall have "such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians and persons of unsound mind and their estates as is now vested in the circuit court, or may be hereafter prescribed by law." At the time of the adoption of the Constitution of 1874, circuit courts had exclusive jurisdiction over the persons and property of infants. The act of April 22, 1873, conferred that jurisdiction on the circuit court, and provided for the appointment of guardians, both of the person and of the estate of minors, and also provided that guardians of the person of a minor should be entitled to the "charge, custody and control of the person of his ward, and the care of his education, support and maintenance." Kirby's Digest, secs. 3776, 3777. All of that jurisdiction passed to the probate court under the provision of the Constitution quoted above. That jurisdiction is exclusive, but it does not supplant or interfere with the jurisdiction of chancery courts over that subject exercised on independent equitable grounds. *State* v. *Grisby,* 38 Ark. 406; *Watson* v. *Henderson,* 98 Ark. 63.

The matter of adjudicating the question of propriety of sending a child to the refuge provided by the statute could, therefore, be vested in the probate court as a part of its jurisdiction over the persons of infants without impairing the jurisdiction of chancery courts on independent equitable grounds according to the doctrine of the two cases cited above and without encroaching on the criminal jurisdiction of the circuit court. *Ex parte Baker,* 121 Ark. 537. In the Baker case, *supra,* we held (quoting from the syllabus) that "giving circuit judges jurisdiction over an insane person acquitted of a crime on the grounds of insanity" is "not an invasion of the exclusive jurisdiction of the probate court."

In *Watson* v. *Henderson, supra,* Judge WOOD, speaking for the court, quoted with approval from another case, as follows:

"Equity sits silent in the courts as long as the law is able to meet the demands of justice; it aids the law, but is not officious in its services. Equity distinguishes between the shield and the sword. To protect the estate from a danger which the infant, because of his tender years, is unable to defend against is one thing; to commission some one to go into the field of trade, selling and buying on account of the infant is another thing. Courts of equity have original jurisdiction over the estates of minors, but conceding that jurisdiction for certain equitable purposes does not concede jurisdiction to do any and everything whatsoever with the estate of a minor, *quia minor*. The act to be valid must be based on some equitable principle."

Further on in the opinion it was said: "The same principles that govern courts of chancery in interfering with the proceedings and adjudications of courts of probate in the administration of estates of deceased persons should control them in interfering with the administration of the estates of minors in the hands of their guardians, because the original jurisdiction of probate courts in each case is exclusive."

I confess my utter inability to comprehend the use of the term "private guardianship of infants" as distinguishing a class over which the general jurisdiction of the probate court does not extend. As I have already remarked, in the allotment of jurisdiction of the courts the framers of the Constitution vested in the probate court *all* of the jurisdiction over the persons and estates of minors as such. This does not take away any of the jurisdiction allotted to other courts on independent grounds, even though its exercise may relate to the interests of minors. It does not take away the criminal jurisdiction of the circuit courts or of justices of the peace, even though the exercise of that jurisdiction may be and often is exercised in the rendition of judgments

against minors. It does not take away from those courts the civil jurisdiction over litigation concerning the property rights of minors. But, so far as the courts may deal with infants as such, the exclusive jurisdiction is given to the probate courts.

The control of infants and any other class of dependent or helpless persons is not a matter of "local concern," within the meaning of that term as used in prescribing the jurisdiction of county courts. Such an application of it would convert it into a "general welfare clause," under which authority might be conferred on the county courts in all of the varied and intricate matters affecting society in the county—health, morals or prosperity, or anything else. Such was not, in my judgment, the intention of the framers of the Constitution in the use of the term "local concern." I think it related solely to the antecedent term "internal improvement." *Little Rock* v. *North Little Rock*, 72 Ark. 195.

The construction of jails and the maintenance of prisoners incarcerated therein are matters of local concern within the exclusive jurisdiction of the county court, but the control over prisoners charged with crimes are not within such jurisdiction, for it belongs to those courts which exercise criminal jurisdiction. Counties may, as matters of local concern, be authorized to build infirmaries for the care of insane persons and jurisdiction over it would be vested in the county court; but this would not carry with it jurisdiction over insane persons, which is, by the Constitution, vested in probate courts. So the counties could, by the Legislature, be authorized to build refuges for the care of dependent or incorrigible children, and that would constitute a matter of local concern, but it would not carry with it jurisdiction to determine when a child should be consigned to that refuge, for to do so is an invasion of the jurisdiction of the probate court.

The majority rely, in support of their views, on certain decisions of this court upholding statutes giving ju-

risdiction to county courts in the matter of regulation of the liquor traffic. Language is quoted from the opinion in one of those cases which seems to sustain the views of the majority that all matters affecting the interests of society in a county are matters of ''local concern'' over which the county court has exclusive jurisdiction; but when the whole opinion in that case is examined, and the opinions of other cases of like nature, it will be seen that the real basis of the county court's jurisdiction over the regulation of the liquor traffic is the taxation power in the granting of license and over elections held for the purpose of determining whether or not license shall be granted. The case of *Freeman* v. *Lazarus,* 61 Ark. 247, is instructive on this subject.

I dissent, therefore, from the holding that jurisdiction was properly conferred in the county court.

SMITH, J. (dissenting). I think it sufficiently appears from the analysis of the act under review contained in the majority opinion that a court, and not a mere administrative agency, has been created. It is so expressly stated in the act, and the jurisdiction of this court is defined and the practice and procedure therein are prescribed. It is true that certain functions of an administrative character are imposed on this court, but it remains a court notwithstanding that fact.

In my opinion, the difficult question in the case is, has the jurisdiction here defined been conferred upon the proper court? And the very difficulty we have experienced, in arriving at a correct answer to that question confirms me in my view that the jurisdiction here conferred upon the county court properly belongs to the circuit court, and that the act is void because it was not lodged there.

The majority opinion reflects the fact that it has been seriously considered whether or not, under the authority of the cases there cited, the jurisdiction defined in the act under review did not inhere in the chancery court. But, after a careful consideration of all our cases

throwing light upon the subject, we have all concluded that the chancery court does not have the jurisdiction here conferred upon the county court.

I agree fully with the majority that this jurisdiction does not belong to the probate court. There is nothing in the act which would interfere with any guardian in the discharge of his duties as such. Children with guardians who are dependent, neglected or delinquent are made subject to the act just as are dependent, neglected or delinquent children having parents.

A minor with a guardian might be convicted of some misdemeanor, under the judgment of a justice of the peace, or of some felony in the circuit court without infringing upon the jurisdiction of the probate court. So, here, the necessity for the restraining and corrective influence of the industrial school might be as great in the case of a minor having a guardian as in that of a minor who did not have one. So I fully concur with the majority that the constitutional provision vesting in probate courts jurisdiction in matters relative to guardianship refers solely to the private guardianship of the person and estates of minors, that is, to the guardianship as it affects the person and the estate of the individual minor, but not the interests of the public, and that the jurisdiction over infants so far as their conduct and condition might affect, not only themselves, but also the welfare of the communities in which they reside, was vested in some tribunal other than the probate court.

If it were conceded that the custody and control of delinquent, dependent or neglected children was a matter of *local concern,* as that term is used in the Constitution, then the majority have reached the correct conclusion; but I submit that the framers of the Constitution had no such definition in mind when they employed that term in defining the jurisdiction of county courts.

The "local concern" must not be interpreted as meaning those things which the people of a particular community are locally concerned, for such a definition would include the suppression of crimes generally and

many other matters over which no one would contend the county court had jurisdiction.

In the case of *Little Rock* v. *North Little Rock,* 72 Ark. 195, it was insisted that the attempt of the Legislature to confer authority upon the town council to order an election upon the question of a change of municipal boundaries was a violation of the provision of the Constitution giving the county courts "exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that they may be necessary to the internal improvment and local concerns of the respective counties." Article 7, section 28, Constitution 1874. Answering that insistence, the court there defined "local concern" in the following language, which is appropriate here:

"But the argument that the change of boundaries between two incorporated towns is a 'local concern,' within the meaning of this provision of the Constitution, seems to prove too much; for, if that be true, why are not the improvements of city streets and the other local improvements of the city local concerns, within the meaning of the Constitution, and why does not the county court have exclusive jurisdiction in such matters also? * * * It thus appears that the local concerns over which the county court is given exclusive jurisdiction are those which relate specially to county affairs, such as public roads, bridges, ferries, and other matters of the kind mentioned in the section referred to, and we do not think that the formation of towns and cities, or the change of their boundaries, is a local concern, of which the county court has exclusive jurisdiction. This conclusion is, we think, sustained by the former decisions of this court."

The majority say that, if this jurisdiction is not vested in the county courts, it must be vested in the circuit courts; and that, in my opinion, is where it is vested. The jurisdiction of the circuit courts is not of a "lest we forget" character. These courts have the great re-

siduum of jurisdiction over all matters which have not been confided by the Constitution to the jurisdiction of other tribunals. The jurisdiction of these other tribunals is defined, and the jurisdiction not assigned to some other tribunal is vested in the circuit courts. It must be true, therefore, that if the chancery courts, the county courts or the probate courts do not possess this jurisdiction, the circuit courts must do so.

The desire to uphold this legislation is common to us all, and is fully shared by me, but, as the jurisdiction was taken from the only court which, in my opinion, could properly exercise it, and was conferred upon a court which, under the Constitution, could not exercise it, I must express my view that the legislation is unconstitutional, and I, therefore, dissent from the order and judgment of the majority.