LOIS SADLOCK, BY HER NEXT FRIEND, BESSIE SADLOCK; JOHN MAHLBACHER AND DORIS MAHLBACHER, BY THEIR NEXT FRIEND, DOROTHY MAHLBACHER; NELLIE DEN HERDER, JOHN DEN HERDER, CELENE DEN HERDER, JEAN DEN HERDER, HENRY DEN HERDER, BY THEIR NEXT FRIEND, GEORGE DEN HERDER; GEORGE SNYDER, WILLIAM SNYDER AND ROBERT SNYDER, BY THEIR NEXT FRIEND, GEORGE H. SNYDER, JR.; FERN WHITMAN AND DOROTHY WHITMAN, BY THEIR NEXT FRIEND, HELEN WHITMAN; WILLIAM PARZYNSKI, BY HIS NEXT FRIEND, MARGARET PARZYNSKI; AND ROSE PIAZZA, BY HER NEXT FRIEND, ANDREW PIAZZA, PROSECUTORS, v. THE BOARD OF EDUCATION OF THE BOROUGH OF CARLSTADT IN THE COUNTY OF BERGEN, AND EDWARD F. KROM, RESPONDENTS.

Submitted January 20, 1948—Decided April 1, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutors, *Charles L. Bertini.*

For the respondents, *Sher, Malech & Sher (Morris Malech,* on the brief).

The opinion of the court was delivered by

EASTWOOD, J. *Certiorari* has been allowed to review a certain resolution of the Board of Education of the Borough of Carlstadt, Bergen County, adopted on May 6th, 1947, making vaccination of school children in the public schools of the Borough of Carlstadt compulsory. Upon the failure and refusal of prosecutors to be so vaccinated they were excluded from the schools by the respondent Edward F. Krom, supervising principal of the Carlstadt public schools. It has been provided, however, upon the allowance of the writ that the order of exclusion be held in abeyance until the further rule or order of this court in the premises.

The resolution of May 6th, 1947, requiring vaccination or revaccination of school children as a prerequisite to their admission in the public schools of the Borough of Carlstadt was adopted in accordance with the provisions of *R. S.* 18:14–52. The statute reads as follows:

"A board of education may exclude from school any teacher or pupil who has not been successfully vaccinated or revaccinated, unless the teacher or pupil shall present a certificate signed by the medical inspector appointed by the board of education that the teacher or pupil is an unfit subject for vaccination."

It is urged by the prosecutors that both the resolution of May 6th, 1947, and its parent statute, *R. S.* 18:14–52, are unconstitutional in that they violate the guaranties of the federal and New Jersey Constitutions pertaining to personal and religious liberties. It is said that (1) the resolution excluding the prosecutors from the free public schools denies to them the equal protection of the laws; (2) the resolution was not based upon any judicial determination requiring such action and is, therefore, unlawful and invalid; (3) the reso-

lution denies to certain of the prosecutors the constitutional right to attend the free public schools on account of religious principles and is, therefore, invalid; and (4) the legislature has violated its constitutional duty of maintaining a free public school system when it compels acceptance of the vaccination theory as a fact, and the resolution adopted under *R. S.* 18:14-52 is, therefore, invalid. *Per contra,* the respondents contend that the resolution of May 6th, 1947, was a proper exercise of the police power through its legislative grant; that the ostensible object of the legislation is a valid exercise of legislative authority for the protection of the health and safety of school children, resulting in promoting the efficiency of the public school system and tending for the protection of the public welfare.

So far as we have been able to ascertain the matter before us is one of first impression in this state, although the question of compulsory vaccination has received considerable attention in the federal courts and those of numerous sister States. We have carefully considered the depositions taken under the writ as well as the able briefs of counsel and are of the opinion that the resolution of May 6th, 1947, under review was proper and efficacious. At the outset we desire to observe that the question of the desirability or efficacy of compulsory vaccination by virtue of *R. S.* 18:14-52 and whether it is wise or unwise is strictly a legislative and not a judicial question. It is not the province of the court to pronounce that vaccination is or is not a suitable and satisfactory means of combating disease. Judicial notice, however, will be taken that vaccination is commonly believed to be a safe and valuable means of preventing the spread of certain diseases, particularly smallpox, and that this belief is supported by high medical authority.

The question of general compulsory vaccination laws has received consideration by the United States Supreme Court in *Jacobson* v. *Massachusetts,* 197 *U. S.* 11; 49 *L. Ed.* 643; 25 *S. Ct.* 358, opinion by Mr. Justice Harlan. Our examination of that case leads us to the conclusion that the decision therein is dispositive of the issue before us. *Jacobson* v. *Massachusetts* held, *inter alia,* that the enactment of a statute

requiring compulsory vaccination for the protection of local communities against the spread of smallpox was a proper exercise of the legislative prerogative and that such enactment did not deprive the individual of his constitutional guaranties with reference to personal and religious liberties. Mr. Justice Harlan stated the rule as follows:

"The authority of the state to enact this statute is to be referred to what is commonly called the police power—a power which the state did not surrender when becoming a member of the Union under the Constitution. Although this court has refrained from any attempt to define the limits of that power, yet it has distinctly recognized the authority of a state to enact quarantine laws and 'health laws of every description;' indeed, all laws that relate to matters completely within its territory and which do not by their necessary operation affect the people of other states. According to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. *Gibbons* v. *Ogden,* 9 *Wheat.* 1, 203; *Railroad Co.* v. *Husen,* 95 *U. S.* 465, 470; *Beer Co.* v. *Massachusetts,* 97 *U. S.* 25; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 *U. S.* 650, 661; *Lawlon* v. *Steele,* 152 *U. S.* 133."

And continuing:

"Looking at the propositions embodied in the defendant's rejected offers of proof it is clear that they are more formidable by their number than by their inherent value. Those offers in the main seem to have had no purpose except to state the general theory of those of the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox or who think that vaccination causes other diseases of the body. What everybody knows the court must know, and therefore the state court judicially knew, as this court knows, that an opposite theory accords with the common belief, and is maintained by high medical authority. We must assume that when the statute in question was passed, the legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them. It was not compelled to

commit a matter involving the public health and safety to the final decision of a court or jury. It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain. It could not properly abdicate its function to guard the public health and safety. The state legislature proceeded upon the theory which recognized vaccination as at least an effective, if not the best known way in which to meet and suppress the evils of a smallpox epidemic that imperiled an entire population. Upon what sound principles as to the relations existing between the different departments of government can the court review this action of the legislature? If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution. *Mugler* v. *Kansas,* 123 *U. S.* 623, 661; *Minnesota* v. *Barber,* 136 *U. S.* 313, 320; *Atkin* v. *Kansas,* 191 *U. S.* 207, 223.

"Whatever may be thought of the expediency of this statute, it cannot be affirmed to be, beyond question, in palpable conflict with the Constitution. Nor, in view of the methods employed to stamp out the disease of smallpox, can anyone confidently assert that the means prescribed by the state to that end has no real or substantial relation to the protection of the public health and the public safety. Such an assertion would not be consistent with the experience of this and other countries whose authorities have dealt with the disease of smallpox. And the principle of vaccination as a means to prevent the spread of smallpox has been enforced in many states by statutes making the vaccination of children a condition of their right to enter or remain in public schools.

*Blue* v. *Beach,* 155 *Ind.* 121; *Morris* v. *City of Columbus,* 102 *Ga.* 792; *State* v. *Hay,* 126 *N. C.* 999; *Abeel* v. *Clark,* 84 *Cal.* 226; *Bissell* v. *Davidson,* 65 *Conn.* 183; *Hazen* v. *Strong,* 2 *Vt.* 427; *Duffield* v. *Williamsport School District,* 162 *Pa.* 476."

See, also, *Zucht* v. *King,* 260 *U. S.* 174; 67 *L. Ed.* 194; 43 *S. Ct.* 24, opinion by Mr. Justice Brandeis, who, speaking for the United States Supreme Court in a decision sustaining a city ordinance providing that no child or other person should attend a public school or other place of education without having first presented a certificate of vaccination, commented upon the case of *Jacobson* v. *Massachusetts, supra,* as follows:

"\* \* \* . Long before this suit was instituted, *Jacobson* v. *Massachusetts,* 197 *U. S.* 11, had settled that it is within the police power of a state to provide for compulsory vaccination. That case and others had also settled that a state may, consistently with the Federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative. \* \* \*."

It has been urged by the prosecutors that the resolution of May 6th, 1947, cannot stand since at the time of its adoption, there was no epidemic or threatened epidemic of smallpox in the Borough of Carlstadt, and that, therefore, the resolution performed no reasonable exercise of the police power. This contention is disposed of by the fact that the parent statute, *R. S.* 18:14–52, does not make it a prerequisite that there be such an epidemic or threatened epidemic in order to justify the adoption of the resolution in question. The fact that the resolution affects only such school children as may attend the public schools in the Borough of Carlstadt, and has no regulatory effect upon the children who may attend private schools or school children in districts not requiring vaccination, does not in our opinion vitiate its validity. The resolution in question must of necessity affect the children attending the Borough Schools of Carlstadt, and it does, of course, apply to all of those children. We conclude the classification is a proper one within the mandate of *R. S.* 18:14–52.

We are told that the resolution of May 6th, 1947, has the effect of restricting personal liberty and religious freedom.

The principle is too well established to require citation that the so-called constitutional liberties are not absolute, but are relative only. They must be considered in the light of the general public welfare. To hold otherwise would be to place the individual above the law. The Court of Errors and Appeasl in *Valentine* v. *Englewood et al., 76 N. J. L.* 509; 71 *Atl. Rep.* 344, opinion by Mr. Justice Swayze, affirmed this principle, stating:

"In *Jacobson* v. *Massachusetts, 197 U. S.* 11, the Compulsory Vaccination Act of Massachusetts was sustained, although it interfered with a man's personal liberty. These cases are but illustrations of the extent to which the highest tribunal has gone in vindication of the principle that the individual must yield somewhat of his personal rights to society in return for the benefits of society which he enjoys."

So, too, with respect to the guaranty of religious liberty, the constitutional guaranty of religious freedom was not intended to prohibit legislation with respect to the general public welfare. See *Reynolds* v. *United States, 98 U. S.* 145; 25 *L. Ed.* 244 (upholding the constitutionality of legislation prohibiting the practice of polygamy) opinion by Mr. Chief Justice Waite.

We conclude that the challenged resolution adopted pursuant to the legislative grant in *R. S.* 18 :14–52 was a proper exercise of the police power for the protection of the public welfare and will be sustained. In view of the foregoing we find it unnecessary to comment upon ground (4) *supra,* raised by prosecutors.

The writ is dismissed, with costs.