CUDE v. STATE.

5-3239—5-3240                                377 S. W. 2d 816

Opinion delivered April 6, 1964.
[Rehearing denied May 11, 1964.]

*Shaw & Shaw,* for appellant.

*Ivan H. Smith,* for appellee.

SAM ROBINSON, Associate Justice. The issue is the authority of the courts to appoint a guardian for children between the ages of 7 and 15, inclusive, who are not attending school, and to give the guardian custody of the children with directions to have them vaccinated to facilitate school attendance.

Appellants, Archie Cude and his wife, Mary Frances, are the parents of eight children, three of whom are between the ages of 7 and 15, inclusive. The children are Wayne Monroe, age 12, Delia Marie, 10, and Linda May, 8. Wayne went only to the second grade; the other two have not attended school at all. The children are not in school for the reason that the school authorities will not permit them to attend school because they have not been vaccinated against smallpox. The Cudes will not permit such vaccinations; they contend that it is contrary to their religion.

This litigation was commenced by Ben Core, Prosecuting Attorney for the Ninth Judicial District of the State of Arkansas, filing in the Probate Court of Polk County, on behalf of the State, a petition alleging that the three Cude children were not attending school; that the father, Archie Cude, had been fined on three occasions for violating the law requiring that parents send their children to school, and he has persisted in his refusal to have the children vaccinated so that they can attend school, and that the father has avowed that he will never permit the children to be vaccinated; that unless the children are removed from the custody of the natural parents they will not have all the benefits and advantages of a school education. The petition asks that the children be placed in the custody of the Child Welfare Division of the State Welfare Department.

The appellants responded, contending first, that the probate court did not have jurisdiction, and further, that vaccination of the children was against respondents' religious beliefs. There was a full scale hearing; it was shown that the children were not attending school because they had not been vaccinated; that the appellants

would not permit them to be vaccinated because of their religious beliefs, and appellant, Archie Cude, testified that if the children were taken from him and vaccinated he would not accept them back.

The court appointed Miss Ruth Johnston, Director of the Child Welfare Division of the State Welfare Department, as guardian of the children. The order further provides: "Said guardian is authorized and directed to file a petition in the Chancery Court of Polk County, Arkansas, for the purpose of obtaining the physical control and custody of the children for the purpose of having such children properly vaccinated and immunized against the disease of smallpox, and thereafter enrolled in the public schools of this State, all in accordance with the laws of this State, and all to be done by qualified and licensed and practicing physicians of this State as soon as is reasonably possible after the said children are in the custody of said guardian. After the immunization of the said children, the guardian shall offer, through the office of the Prosecuting Attorney for the 9th Judicial Circuit, to deliver the said children back into the custody of the Defendants, and the guardian is authorized and directed to do so, and if the Defendants shall not accept the said children back into the home of the Defendants, then the said guardian is hereby authorized and empowered to consent to the subsequent adoption of the said children by a party or parties acceptable to the Guardian and to the Probate Court which may consent."

Pursuant to the foregoing order, the guardian, Ruth Johnston, filed a petition in the chancery court asking for custody of the children. Over appellants' protest the petition was granted. The Cudes have appealed.

Actually, there are two appeals; one from the order of the probate court appointing the guardian; the other from the order of the chancery court giving Miss Johnston custody of the children. The cases have been consolidated on appeal.

For the purposes of the appeal, we will assume that the Cudes, in good faith because of their religious beliefs,

will not permit the children to be vaccinated. Then the question is whether they have the legal right to prevent vaccination. The answer is that they do not have such right.

There is no question that the laws of this State require parents to send to school their children between the ages of 7 and 15, inclusive. Ark. Stat. Ann. § 80-1502 (Repl. 1960) provides: "Every parent, guardian, or other person residing within the State of Arkansas and having in custody or charge any child or children between the ages of seven [7] and fifteen [15], (both inclusive) shall send such child or children to a public, private, or parochial school under such penalty for non-compliance with this section as hereinafter provided."

The school administrative authorities of the State of Arkansas have adopted a regulation requiring vaccination as follows: "No person shall be entered as a teacher, employee or pupil in a public or private school in this state without having first presented to the principal in charge or the proper authorities, a certificate from a licensed and competent physician of this State certifying that the said teacher, employee or pupil has been successfully vaccinated; or in lieu of a certificate of successful vaccination, a certificate certifying a recent vaccination done in a proper manner by a competent physician; or a certificate showing immunity from having had small-pox. . ." There is no question about the validity of this regulation. *State* v. *Martin,* 134 Ark. 420, 204 S. W. 622; *Seubold* v. *Ft. Smith Special School Dist.,* 218 Ark. 560, 237 S. W. 2d 884.

It is clear that the law requires that the children attend school, and a valid regulation requires that they be vaccinated. The next question is: Are appellants, because of their religion, exempt from the law and the regulation requiring that the children be vaccinated so that they can go to school? It will be remembered that appellants do not object to the children going to school; it is the vaccination that is objectionable to them. But, according to a valid regulation, the children are not permitted to go to school without having been vaccinated.

Article 2, Sec. 24 of the Constitution of Arkansas provides: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. No human authority can, in any case or manner whatsoever, control or interfere with the right of conscience; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other." The foregoing provision of the Constitution means that anyone has the right to worship God in the manner of his own choice, but it does not mean that he can engage in religious practices inconsistent with the peace, safety and health of the inhabitants of the State, and it does not mean that parents, on religious grounds, have the right to deny their children an education.

The U. S. Supreme Court said in *Prince v. Commonwealth of Massachusetts,* 321 U. S. 158, S. Ct. 438, 88 L. Ed. 645: "The right to practice religion freely does not include liberty to expose the community or the child to communicable diseases or the latter to ill health or death . . . Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves."

It is a matter of common knowledge that prior to the development of protection against smallpox by vaccination, the disease, on occasion, ran rampant and caused great suffering and sickness throughout the world. According to the great weight of authority, it is within the police power of the State to require that school children be vaccinated against smallpox, and that such requirement does not violate the constitutional rights of anyone, on religious grounds or otherwise. In fact, this principle is so firmly settled that no extensive discussion is required.

In the early case of *Reynolds* v. *U. S.*, 98 U. S. 145, the issue was whether a Mormon who believed in polygamy was immune from the operation of the statute forbidding the practice of multiple marriage. There, the court said: ". ... the only question which remains is, whether those who make polygamy a part of their religion are excepted from the operation of the statute. If they are, then those who do not make polygamy a part of their religious belief may be found guilty and punished, while those who do, must be acquitted and go free. This would be introducing a new element into criminal law. Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere and prevent a sacrifice? Or if a wife religiously believed it was her duty to burn herself upon the funeral pile of her dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice?"

In cases too numerous to mention, it has been held, in effect, that a person's right to exhibit religious freedom ceases where it overlaps and transgresses the rights of others. We cite a few cases upholding the validity of statutes requiring vaccination, and affirming orders of courts authorizing blood transfusions, etc. *In Re Whitmore,* 47 N. Y. Supp. 2d 143; vaccination of school child. *Sadlock* v. *Board of Education,* 58 A. 2d 218; vaccination of school child. *State* v. *Perricone,* 181 A. 2d 751; giving blood transfusion to infant. *New Braunfels* v. *Waldschmidt,* 207 S. W. 303; vaccination of school child. *Mosier* v. *Barren County Board of Health,* 215 S. W. 2d 967; vaccination of school child, *Board of Education of Mountain Lakes* v. *Maas,* 152 A. 2d 394; vaccination of school child. *In Re Clark,* 185 N. E. 2d 128; blood transfusion for three year old child.

This court said in *Seubold* v. *Ft. Smith Special School District,* 218 Ark. 560, 237 S. W. 2d 884: "In

*Jacobson* v. *Massachusetts,* 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. 358, the Supreme Court of the United States considered the matter of compulsory vaccination as infringing on rights claimed under the United States Constitution, and held that a State law requiring compulsory vaccination did not deprive a citizen of liberty granted by the United States Constitution. More recently, in the case of *Zucht* v. *King,* 260 U. S. 174, 67 L. Ed. 194, 43 Sup. Ct. 24, the United States Supreme Court again considered the matter of compulsory vaccination; and Mr. Justice BRANDEIS, speaking for the Court said: '. . . Long before this suit was instituted, *Jacobson* v. *Massachusetts,* 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. Rep. 358, 3 Ann. Cas. 765, had settled that it is within the police power of a state to provide for compulsory vaccination.' "

Appellant contends that in the circumstances of this case the probate court does not have jurisdiction to appoint a guardian. The Constitution of Arkansas, Article 7, Sec. 34 provides: "In each county the Judge of the court having jurisdiction in matters of equity shall be judge of the court of probate, and have such exclusive original jurisdiction in matters relative to . . . *guardians . . . The judge of the probate court shall try all issues of law and of facts arising in causes or proceedings within the jurisdiction of said court, and therein pending"* (our italics).

It will be noticed that the above provision of the Constitution gives probate courts jurisdiction in matters relative to guardians, and provides that the probate court shall try all issues of law and facts in causes within the jurisdiction of the court and pending therein.

In 1911, by Act 215, the General Assembly created what is known as the Juvenile Court. For the purposes of the Act, all persons under 21 years of age are considered wards of the state, Ark. Stat. Ann. § 45-201 (1947), and a dependent or neglected child means any person under the age of 21 who ". . . has not proper parental care or guardianship . . ." Ark. Stat. Ann. § 45-203

(1947). The county judge was made the judge of the Juvenile Court.

Ark. Stat. Ann. § 45-210, which is a part of Act 215 of 1911, provides: "Any reputable person, being a resident of the county, may file with the clerk of the court, having jurisdiction of the matter, a petition in writing setting forth that a certain child, naming it, within his county, is either dependent, neglected or delinquent, as defined in section 1 [§§ 45-203, 45-204]; and that it is for the best interest of the child and this State that the child be taken from its parent, parents, custodian or guardian and placed under the guardianship of some suitable person to be appointed by the court; and that the parent, parents, custodian or guardian of such child, are unfit or improper guardians, or are unable or unwilling to care for, protect, train, educate, correct, control or discipline such child, or that the parent, parents, custodian consent that such child be taken from them."

Ark. Stat. Ann. § 45-221 (1947) provides that the juvenile court may appoint a guardian for a dependent or neglected child. In the case of *Ex Parte King,* 141 Ark. 213, 217 S. W. 465, (1919); this court held that in some instances the juvenile court could appoint guardians. However, both Judge McCulloch and Judge Frank Smith wrote strong dissents to the effect that under the Constitution, only the probate court had jurisdiction in matters of guardianship. (At the time of that decision the county judge was also the probate judge.) But, regardless of the soundness of the King case, all doubt as to what court has jurisdiction to appoint a guardian was put to rest by the Probate Code of 1949. Section 191 of Act 140 of the Acts of 1949 (Probate Code) provides: "The jurisdiction of the Probate Court over all matters of guardianship, other than guardianships ad litem in other courts, shall be exclusive, subject to the right of appeal. (c) Not to conflict with Juvenile Courts. The provisions of this code shall not be construed to affect the jurisdiction of authority now vested in Juvenile Courts except in the matter of appointment of guardians."

Without doubt, the foregoing act gives the probate court exclusive jurisdiction in all matters of guardianship, including the appointment of guardians; hence, whatever jurisdiction the juvenile court had to appoint guardians under the act creating such courts, as construed in the King case, is now vested in the probate court. Under the provisions of Article 7, Sec. 34 of the Constitution, "The judge of the probate court shall try all issues of law and of facts arising in causes or proceedings within the jurisdiction of said court and therein pending."

The issue of whether the three children of appellants were neglected was before the probate court in the proceeding for the appointment of a guardian, and the court had jurisdiction to determine that fact. The evidence that the parents would not permit vaccination and thereby enable the children to attend school is sufficient to base a finding of neglect. *In Re Marsh*, 14 A. 2d 368; *Morrison* v. *State*, 252 S. W. 2d 97; *Santos* v. *Goldstein*, 227 N. Y. Supp. 2d 451.

Appellants argue that Archie Cude has been fined on three occasions for not sending the children to school, and that the State has no other remedy. This action was not instituted for the purpose of punishing Cude, but to enable the children to obtain a reasonable education. The fact that Cude has been fined for violation of the law in not sending his children to school in no way benefited the children. It did not bring about the desired result of the children being sent to school.

Appellants argue other points, all of which have been considered and found to be without merit.

Affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice (dissenting). The only penalty which the legislature saw fit to provide for the failure to compel certain children to attend school is contained in Ark. Stat. Ann. § 80-1508 (Repl. 1960) as follows:

... "Each day such persons violate the provisions of this act shall constitute a separate offense, and the penalty for the violation of such provisions shall be a fine not to exceed ten dollars [$10.00] for each offense."

This penalty has been administered against appellants not because they have refused to comply with the compulsory attendance law but because they have refused to comply with an administrative regulation which resulted in the school authorities prohibiting their children's attendance.

It is well settled that penal statutes are to be strictly construed in favor of the accused and courts are not permitted to enlarge the punishment provided by the legislature either directly or by implication. *State* v. *Simmons,* 117 Ark. 159, 174 S. W. 238.

While much of the logic contained in the majority opinion from a sociological standpoint appears to be unanswerable, nevertheless from a legal standpoint I have found no way to escape the conclusion that the trial court and this court on trial de novo on appeal are enlarging the penalty for failure to comply with the compulsory attendance law to an extent never dreamed of by the proper lawmaking body. In the absence of legislation to the contrary, I as a judge am not willing now or ever to say as a matter of law that the failure to comply with this one simple regulation of school administrative authorities constitutes such neglect of children so as to warrant the state administering the cruel and unusal punishment of depriving such children of their natural parents and depriving the natural parents of their children.

Some consolation may be derived from the fact that the children in the case at bar will be offered back to their parents when the State Welfare Department carries out the orders of the court. Even so, the precedent set here that permits the taking of the children *at all* is the vice that opens a Pandora's box which may haunt this court for years to come. In my view, one of the forseeable spectres is the unfettered interference by the

State Welfare Department in areas where it has no legal standing whatsoever. In its apparent zeal to protect the immuned from the unimmuned I believe the majority has given meaning to the word *neglect* which no amount of rationalization can justify. This is the door that has been left open. History reveals that once a door is open to an administrative agency that door is not easily closed. Whose children under what pretext will be taken next? Will they be kept forever? For the reasons stated, I respectfully dissent.