NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-0146-21
A-0159-21

IN THE MATTER OF
CITY OF NEWARK,

     Respondent-Appellant,

and

NEWARK POLICE SUPERIOR
OFFICERS' ASSOCIATION,
NEWARK FIREFIGHTERS
UNION, AFSCME CO. 63
LOCAL 2297, 2298 & 2299, IAFF
LOCAL 1860, FRATERNAL
ORDER OF POLICE LODGE 12,
NEWARK CO. NO. 21 IFPTE,
TEAMSTERS LOCAL 97,
JNESO DIST. CO. 1 IUOE, and
SEIU LOCAL 617,

     Charging Parties-Respondents.
_____

IN THE MATTER OF
CITY OF NEWARK,

     Respondent-Respondent,

and

NEWARK POLICE SUPERIOR
OFFICERS' ASSOCIATION,
NEWARK FIREFIGHTERS

> **APPROVED FOR PUBLICATION**
>
> **September 27, 2021**
>
> **APPELLATE DIVISION**

UNION, AFSCME CO. 63
LOCAL 2297, 2298 & 2299, IAFF
LOCAL 1860, FRATERNAL
ORDER OF POLICE LODGE 12,
NEWARK CO. NO. 21 IFPTE,
TEAMSTERS LOCAL 97,
JNESO DIST. CO. 1 IUOE, SEIU
LOCAL 617,

     Charging Parties-Appellants/
     Cross-Respondents,

and

NEWARK CO. NO. 21 IFPTE,

     Charging Party-Respondent/
     Cross-Appellant.

_____

Argued September 22, 2021 – Decided September 27, 2021

Before Judges Fuentes, Gilson, and Gummer.

On appeal from the State of New Jersey Public Employment Relations Commission, PERC Nos. CO-2022-026, CO-2022-029, CO-2022-033, CO-2022-034, CO-2022-035, CO-2022-036, CO-2022-038, CO-2022-040, CO-2022-042.

Matthew J. Giacobbe argued the cause for appellant/respondent City of Newark (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Matthew J. Giacobbe, of counsel and on the briefs; Gregory J. Franklin and Mark A. Nehme on the briefs).

Craig S. Gumpel argued the cause for respondents/appellants/cross-respondents, Newark

Firefighters Union and Newark Police Superior Officers' Association (Law Offices of Craig S. Gumpel, LLC; Craig S. Gumpel, of counsel and on the joint briefs).

Kevin P. McGovern argued the cause for respondent/appellant/cross-respondent, Teamsters Local 97 (Mets Schiro & McGovern, LLP, attorneys; Kevin P. McGovern, on the briefs).

Raymond G. Heineman, Jr. argued the cause for respondents/appellants/cross-respondents, JNESO District Council 1, IUOE (Kroll, Heineman, Ptasiewicz & Parsons, attorneys; Seth B. Kennedy, on the brief).

Christine Lucarelli, General Counsel, argued the cause for respondent Public Employment Relations Commission (Christine Lucarelli, on the briefs).

Zazzali Fagella Nowak Kleinbaum & Friedman, attorneys for respondents/appellants/cross-respondents, AFSCME New Jersey Council 63, Locals 2297, 2298, 2299 and IAFF Local 1860 (Paul L. Kleinbaum, of counsel and on the joint briefs; Albert J. Leonardo, on the joint briefs).

Markowitz & Richman, attorneys for respondent/appellant/cross-respondent, Fraternal Order of Police Lodge 12 (Matthew D. Areman, of counsel and on the joint briefs, Stephen C. Richman, on the joint briefs).

Law Offices of Daniel J. Zirrith, LLC, attorneys for respondent/appellant/cross-appellant, Newark Council No. 21 IFPTE (Daniel J. Zirrith, on the briefs).

A-0146-21

Oxfeld Cohen, PC, attorneys for respondent/ appellant/cross-respondent, SEIU Local 617 (Arnold Shep Cohen and R. Leigh Adelman, on the joint briefs).

The opinion of the court was delivered by

GILSON, J.A.D.

On leave granted on an accelerated schedule, we review a September 1, 2021 order issued by a Designee of the Public Employment Relations Commission (PERC), which denied in part and granted in part preliminary injunctive relief concerning an executive order issued by the Mayor of the City of Newark (the City) mandating that all City employees be fully vaccinated against COVID-19. We affirm the portion of the PERC order allowing the City to implement its vaccination mandate and reverse and vacate the portion of the order that imposed restraints on the City or required any negotiations concerning the implementation, timing, or enforcement of the City's vaccination mandate. In short, all restraints imposed by PERC are vacated, and the City can fully implement and enforce its COVID-19 vaccination mandate forthwith.

## I.

On August 10, 2021, the Mayor of the City issued Executive Order No. MEO-21-0008 (the Executive Order) mandating that all City employees "be

4

fully vaccinated against COVID-19" by August 16, 2021. The Mayor acted in consultation with all City department heads, including the Chief Executive of the City's Department of Health. The Executive Order was also signed by the City's Corporate Counsel, Business Administrator, and Clerk.

The Executive Order cites the facts that (1) COVID-19 is a contagious disease that can cause serious illness and death; (2) COVID-19 has caused serious sickness and death in the City; (3) in March 2020, the Governor of New Jersey, Philip D. Murphy, declared a public health emergency and state of emergency because of the spread of COVID-19; (4) the United States Food and Drug Administration (FDA) has approved emergent use of certain vaccines (COVID-19 vaccines), which are widely available and effective in preventing COVID-19;[1] (5) medical experts believe that COVID-19 vaccines are safe and help to prevent the disease, as well as the serious illness and death caused by the disease; (6) the Delta variant of COVID-19 has increased the risk of spreading COVID-19; (7) the Centers for Disease Control (CDC) and health experts believe that people who are fully vaccinated against COVID-19 "appear to be protected against the Delta variant and serious illness,

_____

[1] More recently, the FDA has fully approved the Pfizer-BioNTech vaccine. Press Release, FDA, <u>FDA Approves First COVID-19 Vaccine</u> (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

hospitalization and death"; (8) the number of unvaccinated individuals testing positive for COVID-19 and requiring hospitalization in Newark continues to rise; and (9) science and health experts warn that people who are not vaccinated are at greater risk to contract COVID-19 and at greater risk to suffer serious illness, hospitalization, and death.

The Executive Order requires all City employees to provide proof of full vaccination. Any employee who is not fully vaccinated must provide proof of initial vaccination and has thirty days to provide proof of full vaccination and, in the interim, must be tested weekly. The employee is responsible for the cost of testing.[2] The Order allows exceptions for religious and medical reasons.

Any employee who fails to comply with the vaccination mandate can be disciplined, up to termination from employment. In that regard, the Executive Order states:

> If the employee fails to provide a valid negative COVID-19 test result, then the employee will not be allowed to work and will be sent home. He/she will be pay deleted for the day(s) he/she cannot report to work and will be subject to discipline, up to and including termination.
> …

---

[2] At oral argument, counsel for the City represented that the Mayor had issued an amended executive order stating that the City will pay for the testing and will discuss progressive discipline with the Unions.

> Any City employee that refuses to follow or adhere to this Executive Order shall be disciplined up to and including termination.

On August 12, 2021, the Newark Police Superior Officers' Association (SOA) filed unfair labor practice charges against the City with PERC. The SOA alleged that the City violated sections 5.4(a)(1) and (5) of the New Jersey Employer-Employee Relations Act (the EER Act), N.J.S.A. 34:13A-1 to -55.[3] The SOA also sought injunctive relief. The following day, a PERC Designee, Director Jonathan Roth (the PERC Director), issued a temporary restraining order enjoining the implementation of the Executive Order.

Thereafter, eight other unions representing City employees (collectively, the Unions) filed unfair labor practice charges and sought injunctive relief to prevent the implementation of the COVID-19 vaccination mandate. PERC consolidated those matters.

On August 31, 2021, the PERC Director heard argument on the consolidated orders to show cause. The next day, the Director issued I.R. No. 2022-4 (the PERC Order) denying in part and granting in part injunctive relief. In doing so, the PERC Director effectively vacated his earlier temporary restraining order and replaced it with a preliminary injunction order.

---

[3] The SOA represents that before filing the unfair practice charges, it requested the City to negotiate over the Executive Order, but the City refused.

A-0146-21

The PERC Director held that the COVID-19 vaccination mandate was "an exercise of the City's managerial prerogative." See the PERC Order at 12. He also held that the mandate impacted "negotiable terms and conditions of employment that are severable from the mandate, including discipline, allotted time periods, costs and locations for COVID-19 testing, privacy concerning or related to testing and vaccines and allotted periods for receiving vaccinations" (the Negotiable Terms). Id. at 12-13. In addressing the Negotiable Terms, the Director reasoned that imposing the vaccination mandate could have a "chilling effect on the negotiations process" because all the Unions were "either negotiating successor collective negotiations agreements or haven't signed such agreements." Id. at 13.

In addition, the PERC Director held that the relative hardships of the parties tipped in favor of the Unions. Finally, the Director reasoned that the public interest would be advanced "by requiring the City to negotiate before implementing those mandatorily negotiable term[s] and conditions of employment in [the Executive Order]." Id. at 14.

Accordingly, the PERC Order does not restrain the City "from the decision to mandate vaccinations," but ordered the City to "expeditiously negotiate in good faith upon demand all mandatorily negotiable impacts of its

8

prerogative to mandate full vaccinations against COVID-19 as set forth in [the Executive Order]." Id. at 15.

The City and six unions filed for emergent relief. We granted all parties leave to appeal the PERC Order, accelerated and consolidated the appeals, and conducted oral argument on September 22, 2021.[4]

II.

The City argues that PERC erred in ordering it to negotiate (1) discipline resulting from the Executive Order; and (2) timelines for the Executive Order. In short, the City contends that the vaccination mandate will be ineffective if it is required to negotiate its ability to enforce and set deadlines for vaccination.

The Unions contend that they were entitled to a full preliminary injunction restraining the City from implementing any part of its COVID-19 vaccination mandate before negotiating with the Unions. They argue that the City should be ordered to negotiate in good faith before implementing the vaccination mandate. Accordingly, the Unions do not object to the part of the PERC Order requiring the City to negotiate the nature and scope of the

---

[4] We allowed all parties to file two sets of briefs and supplemental briefs. Thus, all parties had a full opportunity to address the merits of the PERC Order. The New Jersey Attorney General declined our invitation to participate as an amicus curiae.

disciplinary sanctions available to the City to enforce the vaccination mandate. Instead, they assert that PERC erred in holding that the City's vaccination mandate was a managerial prerogative.

We hold that the City has a non-negotiable managerial prerogative to immediately implement its COVID-19 vaccination mandate. We also hold that the Unions failed to make the showing required for preliminary injunctive relief. Consequently, we affirm the portion of the PERC Order that held that the City had a managerial prerogative to implement its COVID-19 vaccination mandate. We reverse and vacate the restraints PERC placed on the City, including the requirement to negotiate the Negotiable Terms. The restraints imposed on the City under these circumstances impermissibly interferes with the City's managerial prerogative to protect the health and safety of all its employees and the City residents with whom those employees come into contact. If necessary, the City and Unions can negotiate who will pay the cost of testing without interfering with the City's prerogative, but those negotiations can take place after the mandate is implemented.

A.

There are two primary issues presented by these appeals. First, we must determine whether the City, acting through the Mayor, has the authority to

issue a vaccination mandate. Second, if the City has that authority, we must determine whether the City is required to negotiate the implementation or impact of its vaccination mandate with the Unions.

The question of whether the City has a managerial prerogative is primarily a question of law, which we review de novo. See In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 406 (App. Div. 2018) (describing question of law as "subject to de novo review"); see also Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 307 (App. Div. 2012) (noting that injunctive relief decisions "are normally reviewed for abuse of discretion," but "review is de novo where the disputed issue is a question of law") (citation omitted). Moreover, because there was no evidentiary hearing and the parties are not disputing material facts, we are applying the law to undisputed facts. In essence, the PERC Director accepted the facts in the record and then applied the law to those facts. In such situations, appellate review is less deferential. See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (observing that "when [a PERC] decision is based on . . . its determination of a strictly legal issue, [appellate courts] are not bound by the agency's interpretation") (internal quotation marks omitted).

11

We also note that to obtain preliminary injunctive relief, the Unions were required to show that they had a reasonable probability of ultimate success on the merits, which generally also includes a showing that most of the material facts are not in dispute. See Waste Mgmt. v. Union Cnty. Utils. Auth., 399 N.J. Super. 508, 528 (App. Div. 2008) ("The time-honored approach in ascertaining whether a party has demonstrated a reasonable likelihood of success requires a determination of whether the material facts are in dispute and whether the applicable law is settled.") (citation omitted); Subcarrier Commc'ns Inc. v. Day, 299 N.J. Super. 634, 638 (App. Div. 1997) (quoting Crowe v. De Gioia, 90 N.J. 126, 133 (1982)) (explaining "a preliminary injunction should not issue where all material facts are controverted").

1.    The City's Authority.

In issuing the Executive Order, the Mayor relied on the public health emergency created by COVID-19 and his authority to supervise all City departments and City employees. See N.J.S.A. 40:69A-40. The Mayor, as the chief executive officer of the City, has the authority to establish policies governing City employees. See N.J.S.A. 40A:61-4(a) ("The mayor shall be the

chief executive officer of the city.").  In public employment, that authority is well-established under the concept of a managerial prerogative.

A managerial prerogative exists when (1) "some statutory or constitutional grant of authority" is delegated to a public employer; (2) a public employer exercises a commonly recognized managerial prerogative, "such as the right to hire or direct the work force;" or (3) a public employer is acting pursuant to a "nondelegable legislative directive."  Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n, 81 N.J. 582, 588 (1980).

"Public policy . . . properly is determined through the political process, by which citizens hold government accountable, and not through collective negotiation."  Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 333 (2015).  Accordingly, "[t]he role of the courts in a scope-of-negotiations case is to determine . . . whether an issue is appropriately decided by the political process or by collective negotiations."  Local 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 402 (1982).  Courts "must balance the competing interests by considering the extent to which collective negotiations will impair the determination of governmental policy."  Ibid.

A-0146-21

When a public health emergency exists, governmental entities, including local authorities, have a recognized right to require vaccinations. See Jacobson v. Commonwealth of Mass., 197 U.S. 11, 27-28 (1905) (holding that a city's board of health could require vaccination when authorized by state law); Sadlock v. Bd. of Ed. of Carlstadt in Bergen Cnty., 137 N.J.L. 85, 87 (Sup. Ct. 1948) (upholding a board of education's compulsory vaccination requirement adopted in accordance with state law).

In support of establishing the immediate health emergency created by COVID-19, the City submitted a certification of Dr. Mark Wade, Director of Newark's Department of Health and Community Wellness. Dr. Wade certified that (1) as of late July 2021, 95.5% of COVID-19 infections in New Jersey were caused by the Delta variant and 99.93% of COVID-19 hospitalizations were unvaccinated or not fully vaccinated persons; (2) in June and July 2021, 92.23% of those who had contracted COVID-19 in Newark had been unvaccinated; (3) unvaccinated people are at a "tremendously higher risk" of both contracting the COVID-19 Delta variant and of passing on the infection to someone else; and (4) the COVID-19 vaccination mandate will increase the number of vaccinated individuals in Newark, significantly reducing hospitalization and deaths resulting from COVID-19 and limiting COVID-19's

14

ability to mutate into deadlier or more contagious variants. The Unions do not dispute those facts.

Instead, the Unions argue that there is no express statutory authority for a COVID-19 vaccination mandate. They point out that in Jacobson and Sadlock, the local governments acted in accordance with enabling statutes. See Jacobson, 197 U.S. at 12-13; Sadlock, 137 N.J.L. at 86; see also Zucht v. King, 260 U.S. 174, 176 (1922) (Brandeis, J.) (Jacobson and other cases have "settled that a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative. . . . And [other cases] had settled that the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law.") (citation omitted).

Significantly, in issuing the COVID-19 vaccination mandate, the Mayor was not acting in a vacuum. The President of the United States has declared a national emergency concerning the novel COVID-19 outbreak.[5] Our Governor

---

[5] See Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 Fed. Reg. 15,337 (Mar. 13, 2020) (declaring the COVID-19 outbreak in the United States constitutes a national emergency under the National Emergencies Act §§ 201, 301, 50 U.S.C. §1601 and the Social Security Act § 1135, 42 U.S.C. § 1320b-5); see also Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic, 86 Fed. Reg. 11,599 (Feb. 24, 2021) (continuing

has also declared a public health emergency and state of emergency because of the spread of COVID-19.[6]

Consistent with those declarations, the President of the United States has directed that all federal workers, as well as workers for federal contractors, be vaccinated or comply with testing requirements.[7] Our Governor has also announced that all state employees will be required to be vaccinated or comply with testing requirements.[8] In addition, our Chief Justice has issued a directive requiring all judicial employees to be vaccinated or comply with testing

---

the national emergency declared previously concerning the COVID-19 pandemic under the National Emergencies Act § 202(d), 50 U.S.C. § 1622(d)).

[6] See Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020) (declaring a public health emergency under N.J.S.A. 26:13-1 to -36, and a State of Emergency under N.J.S.A. App. A:9-30 to -63); see also Exec. Order No. 244 (June 4, 2021), 53 N.J.R. 1131(a) (July 6, 2021) (terminating the public health emergency under N.J.S.A. 26:13 but continuing the State of Emergency under N.J.S.A. App. A:9-33 to A:9-57).

[7] See Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 9, 2021).

[8] See Exec. Order No. 253 (Aug. 23, 2021), 53 N.J.R. 1547(a) (Sept. 20, 2021) (requiring all school personnel to vaccinate or comply with testing requirements under N.J.S.A. App. A:9-34 and -51); see also Gov. Phil Murphy, Transcript: August 23rd, 2021 Coronavirus Briefing Media, https://nj.gov/governor/news/news/562021/approved/20210823c.shtml (announcing the same vaccination policy for state employees, "including those at all state agencies, authorities, and public colleges and universities").

A-0146-21

requirements.[9]  Moreover, other federal agencies, state officials, cities, and

municipalities have also issued similar COVID-19 vaccination requirements.[10]

---

[9]  See News Release, New Jersey Courts, Judiciary Employees to be Vaccinated or Tested Weekly for COVID-19 (Aug. 6, 2021), https://www.njcourts.gov/pressrel/2021/pr080621b.pdf?c=zXC.

[10]  See Memorandum from Secretary of Defense Lloyd J. Austin III on Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members (Aug. 24, 2021), https://media.defense.gov/2021/Aug/25/2002838826/-1/-1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF (requiring full vaccination of all members of the Armed Forces under Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, under Department of Defense Instruction 6205.02, "DoD Immunization Program," July 23, 2019); Exec. Order No. 13G, (Sept. 10, 2021), https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-13G.pdf (Connecticut Governor declaring COVID-19 vaccination requirements for current and prospective state employees and state hospital employees, current and prospective employees of school boards and child care facilities, and certain long-term care workers under Conn. Gen. Stat. § 19a-131, Conn. Gen. Stat. § 28-9, 2021 Conn. Spec. Acts 21-2, 2021 Conn. Spec. Acts 21-4, and 2021 Conn Spec. Acts 21-5); Order, (Sept. 1, 2021), https://www.denvergov.org/files/assets/public/covid19/documents/public-orders/amended-ddphe-vaccine-order_9.1.21_web_update_revision.pdf (City and County of Denver requiring all personnel working for the city and county, in healthcare settings, schools, including post-secondary and higher education, and entities providing first responder services to be fully vaccinated against COVID-19 under COLO. REV. STAT. § 24-33.5-701 to -717); see also Klaassen v. Trs. of Ind. Univ., 7 F.4th 592 (7th Cir. 2021) (upholding state university's COVID-19 vaccination requirement for students against due process clause challenge).  Note this is not a comprehensive list, but it is representative.

17

The City has not cited to any statute or regulation authorizing the City or Mayor to establish a vaccination mandate. Nevertheless, the City has a well-recognized right to hire or direct its workforce. See Woodstown-Pilesgrove, 81 N.J. at 588. That right, coupled with the clear national and state public policy to combat the health threats posed by COVID-19, supports the City's authority to implement a vaccination mandate. In that regard, our Supreme Court has recognized that the COVID-19 pandemic is an extraordinary situation justifying extraordinary responses. See generally New Jersey Republican State Comm'n v. Murphy, 243 N.J. 574, 580-81 (2020) (upholding the constitutionality of the COVID-19 Emergency Bond Act because the requirement that borrowing must "meet an emergency" extended to "true disaster" of a pandemic).

Moreover, the challenges of the pandemic are not over, even in spaces where the Governor has imposed a vaccination mandate, such as schools.[11] In confronting these challenges, municipalities remain "the broad repository of local police power." N.J.S.A. 40:41A-28. That repository includes authority to legislate for the general health, safety, and welfare of residents. Ibid.

---

[11] See Kelly Heyboer, 6 Outbreaks Reported at N.J. Schools Where Kids or Teachers Caught COVID at School, NJ.COM (Sept. 15, 2021), https://www.nj.com/education/2021/09/6-outbreaks-reported-at-nj-schools-where-kids-or-teachers-caught-covid-at-school.html.

A-0146-21

Consequently, we agree with PERC that the City has a managerial prerogative to implement its vaccination mandate.

2. Whether the City Needs to Negotiate the Impact of the Prerogative.

The Unions maintain that the EER Act requires the City to negotiate the vaccination mandate before it is implemented. They rely on N.J.S.A. 34:13A-5.3, which states: "Proposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established." Sections 5.4(a)(1) and (5) of that Act prohibit public employers from:

> (1) [i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act. . . . (5) [r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative.
>
> [N.J.S.A. 34:13A-5.4(a)(1) and (5).]

The Unions have not shown that implementing the vaccination mandate will violate their rights under the EER Act. The Unions have not cited to anything in their contracts that prohibit the City from issuing a vaccination mandate under these extraordinary circumstances. Instead, they rely on the

19

general principle that public employers have a duty to negotiate procedures for implementing prerogatives. See, e.g., Univ. of Med. v. Am. Ass'n of U. Prof., 223 N.J. Super. 323, 333-34 (App. Div. 1988), aff'd o.b., 115 N.J. 29 (1989). The Unions also argue that issues pertaining to employee health and safety are generally negotiable. See, e.g., In re Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 202-04 (2016) (stating that managerial prerogative does not allow a public employer "to throw a collectively negotiated agreement out the window" any time the employer "can claim an economic crisis"); In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 332 (1989).

By contrast, the City contends that all its contracts with the Unions reserved "the right to hire employees and determine their qualifications for continued employment." We have held that that contractual language gives a public employer the right to discipline and discharge employees for good cause. See Borough of Stone Harbor v. Wildwood Local 59, Policemen's Benevolent Ass'n of N.J., 164 N.J. Super. 375, 379 (App. Div. 1978).

While we do not construe the language concerning the right to hire and determine qualifications for employment to expressly authorize a city or municipality to impose a mandatory vaccination requirement, that language

20

supports the City's authority to impose a mandatory vaccination requirement in a public health emergency. Moreover, no provision or language in the Unions' current contracts expressly prohibits the City from imposing a vaccination mandate.

The Unions' arguments ignore the well-established law that negotiations of managerial prerogatives are not required if the negotiations significantly interfere with the public employer's ability to set policy. See, e.g., In Re Hunterdon Cnty., 116 N.J. at 332; In re Ridgefield Park, 244 N.J. at 17; In re Paterson Police PBA Local No. 1 v. City of Paterson, 87 N.J. 78, 92-93 (1981).

Our Supreme Court has established a three-part test for determining whether a public employer's decision should be subject to mandatory negotiations. See Keyport, 222 N.J. at 334 (citing Local 195, 88 N.J. at 404). A subject is negotiable only when:

> (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy.
>
> [Keyport, 222 N.J. at 334 (quoting Local 195, 88 N.J. at 404).]

The impact of managerial prerogatives is non-negotiable if negotiating the impact would significantly or substantially encroach upon the prerogative.

21

Piscataway Twp. Educ. Ass'n v. Piscataway Twp. Bd. of Ed., 307 N.J. Super. 263, 265 (App. Div. 1998). Our Supreme Court has explained:

> To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [Local 195, 88 N.J. at 405.]

In the context of a public health emergency, negotiating procedures for the implementation of a COVID-19 vaccination mandate, or the enforcement or timing of the mandate, would interfere with the managerial prerogative. COVID-19 has created an immediate and ongoing public health emergency that requires swift action to protect not only the City's employees, but the public they are hired to serve. Tens of thousands of people are sickened each day in our country. Hundreds are dying each day.[12] Delaying, even on a temporary basis, the timelines for implementing the vaccination mandate undercuts the effectiveness of the mandate.

---

[12] Ctrs. for Disease Control & Prevention, Daily Trends in Number of COVID-19 Deaths in the United States Reported to CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last visited Sept. 23, 2021).

The Unions focus on the impact of the mandate to some of their members who have chosen not to be vaccinated. That focus, however, ignores the impact their "choice" has on coworkers and their families who have been vaccinated. Just as importantly, it ignores the impact on people with whom unvaccinated City employees come into contact. City police officers and firefighters go to or into homes, businesses, and public places daily where they encounter City residents. Indeed, all public employees interact with members of the public in a variety of settings and circumstances. Many of those residents are children under the age of twelve who do not have the option of getting vaccinated at the current time.[13] Given the scientifically undisputed risk of spreading this deadly virus, the City has the right to protect the public.

Similarly, requiring the City to negotiate over disciplining City employees who fail to comply with the mandate would undercut the effectiveness of the mandate. The City, as a public employer, has the prerogative to determine the basis for discipline. In re Newark, P.E.R.C. No. 2019-21, 45 N.J.P.E.R. ¶ 55, 2018 WL 7106593. Accordingly, in a COVID-19 pandemic, the impacts of the City's COVID-19 vaccination mandate on City

[13] Ctrs. for Disease Control & Prevention, Age Groups Approved or Authorized to Receive COVID-19 Vaccine by Vaccine Product, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html (last visited Sept. 23, 2021).

employees are non-negotiable.  See Local 195, 88 N.J. at 405; see also Paterson Police PBA, 87 N.J. at 86.

There are many actions that we take as a society to protect the common good.  Sometimes the protection of the many requires an individual, especially a public servant, to act for the public good.  The Unions have not cited any facts that would support the purported rights of what appears to be a minority of City employees to pose a risk to coworkers and City residents.[14]  The people they are committed to serve, in particular, the aged who are among the most vulnerable to COVID-19, and children who currently cannot be protected by a vaccine, are placed at greater risk by unvaccinated City workers.

In that regard, it has long been established that there is no constitutional or statutory right to a government job.  State-Operated Sch. Dist. of City of Newark v. Gaines, 309 N.J. Super. 327, 334 (App. Div. 1998) ("Our laws, as they relate to discharges or removal, are designed to promote efficient public service . . . .  The welfare of the people as a whole, and not exclusively the welfare of the civil servant, is the basic policy underlying our statutory scheme.").  Consequently, City employees have the right to get vaccinated and keep their jobs or decide that they do not want to work for the common good.

---

[14]  At oral argument, counsel for the Unions stated that most of their members were already vaccinated.

B.

The PERC Order granted preliminary injunctive relief. The standard for such relief is well-established. The moving parties must establish (1) a likelihood of success on the merits; (2) irreparable harm; (3) a showing that on balance the harm to the moving party is greater than the harm to the party to be restrained; and (4) the public interest will not be harmed. See Crowe, 90 N.J. at 132-34; Brown v. City of Paterson, 424 N.J. Super. 176, 183 (App. Div. 2012) ("[E]ach . . . factor[] 'must be clearly and convincingly demonstrated'") (quoting Waste Mgmt., 399 N.J Super. at 520); see also McKenzie v. Corzine, 396 N.J. Super. 405, 414 (App. Div. 2007) ("[I]t is generally understood that all these factors must weigh in favor of injunctive relief . . . .").

We generally review findings of those factors for an abuse of discretion. See Stoney, 426 N.J. Super. at 307. On this record, we hold that the Unions made insufficient showings to establish the first, third, and fourth factor required for obtaining preliminary injunctive relief.

As we have already analyzed, the City has a managerial prerogative to issue a COVID-19 vaccination mandate. The Unions have made no showing that they have a right to negotiate the implementation, timing, or enforcement of that mandate. Because the record supports a holding that the

implementation and impact of the mandate are non-negotiable, the Unions have not shown a likelihood of success on the merits.

The Unions have also failed to show that the harm to City employees is greater than the harm to the City. Close to seventy percent of New Jersey adults have been fully vaccinated.[15] Responsible health experts uniformly agree that the COVID-19 vaccines are safe and effective. Delaying the implementation of a COVID-19 vaccination mandate puts people who have contact with unvaccinated people at greater risk and is a harm the City has a right to protect against. For those same reasons, the public interest will be furthered, and will not be harmed, by the City's COVID-19 vaccination mandate.

We are not persuaded by the Unions' arguments that the immediate implementation of the mandate will have a chilling effect on the Unions' current negotiations with the City. The City has represented that it is willing to discuss certain issues. Consequently, the City and Unions are free to discuss who will pay for the cost of the testing and other concerns. The Unions, however, have no right to impede or delay the vaccination mandate

---

[15] At least 5,611,934 people in New Jersey have been fully vaccinated. N.J. Dep't of Health, New Jersey COVID-19 Dashboard: Vaccination Overview, https://covid19.nj.gov/forms/datadashboard (last visited Sept. 23, 2021).

because the City is implementing a well-grounded health policy to respond to an immediate and ongoing public health crisis.

We also reject the Unions' contention that their members have a "strong interest in privacy" that is somehow being impacted by the mandate. The Executive Order requires proof of vaccination. Such proof can be submitted on a confidential basis, and there has been no showing that privacy issues will be impacted. Here again, the City and Unions can discuss those concerns, but such discussions cannot hold up the vaccination mandate.

The Unions have also cited to bills pending in the Legislature that would prohibit discrimination against individuals who have not received a COVID-19 vaccine. See Assemb. B. 5607, 219th Leg., Reg. Sess. (N.J. 2021); S.B. 3681, 219th Leg., Reg. Sess. (N.J. 2021). Those bills are not currently law; existing laws and executive orders strongly support the City's COVID-19 vaccination mandate.

III.

In summary, the City has a managerial prerogative to implement its COVID-19 vaccination mandate. Restraints on that prerogative impermissibly undercut the prerogative and the governmental policy it is implementing. Consequently, PERC's holding that the City has a managerial prerogative to

27

implement the vaccine mandate is affirmed but all restraints imposed by PERC are vacated.

Affirmed in part and reversed in part. The matter is remanded to PERC for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0146-21